**UNITED STATES, Appellee,**

v.

**Vinson MANGOS, Defendant–Appellant.**

**No. 97–1104.**

United States Court of Appeals,
First Circuit.

Heard July 30, 1997.

Decided Jan. 23, 1998.

**462**

William Maselli, with whom Law Offices of William Maselli, Auburn, ME, was on brief for appellant.

Margaret D. McGaughey, Assistant United States Attorney, Portland, ME, with whom Jay P. McCloskey, United States Attorney, Bangor, ME, and George T. Dilworth, Assistant United States Attorney, Portland, ME, were on brief for appellee.

Before SELYA, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and LYNCH, Circuit Judge.

* Of the Eighth Circuit, sitting by designation.

JOHN R. GIBSON, Senior Circuit Judge.

Vinson Mangos appeals from a sentence imposed upon him following his guilty plea to transferring a firearm knowing that it would be used to commit a drug trafficking crime, in violation of 18 U.S.C. § 924(h) (1994). He contends that the district court erred in imposing an eighty-eight month sentence. He argues that: (1) his earlier assault conviction in a Massachusetts court was not a crime of violence under the sentencing guidelines; (2) the district court misinterpreted the guidelines in its treatment of this issue; (3) the district court erred as a matter of law in not departing downward because of the overcounting of prior offenses; and (4) in not granting him a role reduction because he was the least culpable of the various participants. We affirm.

The primary issues in this appeal are the attacks upon the sentence, and thus an abbreviated outline of the events giving rise to his guilty plea suffices. Mangos and three others, Gordon Higgins, Cathy Tremblay, and Luis Morey, attempted to rob John Collins, whom they believed was selling crack cocaine from his trailer. In doing so, Mangos carried his 20–gauge shotgun with a pistol grip when he, Higgins, and Morey entered Collins's trailer. This robbery attempt was aborted.

Four days later Mangos declined to join Higgins, Tremblay, and Morey in a second effort to rob Collins, but allowed Higgins to use his shotgun, knowing that Higgins planned to use it in the robbery. Collins fled through a window but the robbers injured Collins's girlfriend, Jennifer Hanscomb. The robbers found no drugs and left the trailer.

Mangos was charged with a drug conspiracy count and a count for the use of a firearm in a drug trafficking crime. These charges were dismissed when Mangos pleaded guilty to transferring a firearm knowing it would be used to commit a drug trafficking crime.

In sentencing Mangos, the district court assessed two points for a 1992 Massachusetts conviction for larceny, one point for a 1992 assault and battery under Massachusetts law, and yet another point for a 1992 Massachu-

setts conviction for possession of crack cocaine. A 1994 Maine conviction for assault resulted in two points, and a 1994 guilty plea to a separate assault charge in Maine resulted in one point. After failing to pay fines for operating a vehicle under the influence of alcohol in 1994, Mangos was sentenced to incarceration in lieu of the fines, which resulted in two additional criminal history points. The subtotal of the criminal history score was nine, but two points were added because Mangos committed the offense of conviction less than two years after he was released from custody for violating his probation on the assault charge. He thus had eleven criminal history points, which gave him a criminal category of V.

The district court placed the base offense level at 24. The district court added four levels, producing an adjusted offense level of 28, because Mangos transferred the firearm with the knowledge and intent that it would be used in connection with another felony offense. With a three-level reduction for acceptance of responsibility, the total offense level was 25 with a criminal history category of V. The government made a section 5K1.1 motion, and the district court departed downward by twelve months to reach the sentence of eighty-eight months imprisonment, to be followed by three years of supervised release and a $100 special assessment.

## I.

### A.

■ Mangos argues that the district court erred in characterizing his earlier assault and battery of Manuel Herrera in Massachusetts as a "crime of violence" for the purposes of sentencing. Mangos contends that the description in the charging instrument that he "did assault and beat" Herrera is boilerplate language and as such does not sufficiently distinguish whether the assault and battery involved violence or merely nonconsensual offensive touching. The government responds that the language "assault and beat" indicates that the crime involved violence or threatened violence, and, in any event, created a serious risk of potential injury to another.

Under the U.S. Sentencing Guidelines Manual section 2K2.1, a defendant convicted of illegally transferring a firearm is assigned a base offense level of 24 if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense, as opposed to a base offense level of 22 if the defendant has only one such prior offense. The district court determined that Mangos's prior convictions for the assault and battery of Herrera and the assault and battery of Evagelio Rodríguez qualified Mangos for the higher base offense level.

■ Whether the assault and battery of Herrera was a "crime of violence" under the Sentencing Guidelines is a question of law, which we review de novo. *See United States v. Fernandez,* 121 F.3d 777, 778 (1st Cir. 1997). The term "crime of violence" is defined in the Sentencing Guidelines as any offense punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion ... or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. In determining whether a prior offense meets this definition, we take a formal categorical approach, looking to the statutory formulation of the crime charged rather than to the facts behind the actual conviction. See *United States v. Damon,* 127 F.3d 139, 142 (1st Cir.1997); *United States v. De Jesus,* 984 F.2d 21, 23 (1st Cir.1993).

Massachusetts statutory law makes assault and battery a criminal offense punishable by up to two and one-half years imprisonment, but does not define assault and battery. *See* Mass. Gen. Laws ch. 265, § 13A (1996). We look to Massachusetts common law for the meaning of "assault and battery." In *Commonwealth v. Burke,* 390 Mass. 480, 457 N.E.2d 622 (1983), the Supreme Judicial Court of Massachusetts defined assault as an "offer or attempt to do a battery" and stated that every battery includes an assault. *Id.* 457 N.E.2d at 624 (citations omitted.). The court in *Burke* then stated that the law of

battery is bifurcated into harmful batteries and offensive batteries. *Id.*

We reject Mangos's contention that because assault and battery includes offensive but nonharmful conduct, it should not be considered a crime of violence. Under the Sentencing Guidelines, the term "crime of violence" is not limited to those crimes for which violence is a necessary element, but instead extends to any crime which "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii).

In *Fernandez,* this court determined that the Massachusetts crime of assault and battery upon a police officer was properly classified as a crime of violence under the sentencing guidelines. 121 F.3d at 780. We reasoned, "While it is true that neither violence, nor the use of force, is an essential element of the crime as statutorily defined, still, violence, the use of force, and a serious risk of physical harm are all likely to accompany an assault and battery upon a police officer." *Id.* While we recognize that the risks inherent in the assault and battery upon a police officer may differ from those involved in a simple assault and battery, we believe that the reasoning in *Fernandez* applies with similar force to this case.

■ When the state criminal statute involves different types of offenses, some arguably violent and some not, we look first to the charging document to see which type of offense is involved. *See Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990); *Damon,* 127 F.3d at 142–143. Here, the charging document states that Mangos "did assault and beat" Manuel Herrera. The district court, following *United States v. Harris,* 964 F.2d 1234 (1st Cir.1992), found that this statement that the assault amounted to a beating of Herrera qualified the crime charged as a violent and felony offense. This places Mangos's offense into the harmful battery type, and thus meets the definition of a crime of violence under U.S.S.G. § 4B1.2. There is nothing in the record or the charging document that refers to an offensive touching or a touching without consent, such as described in *Burke.*

B.

■ Mangos additionally argues that the district court erred in counting Mangos's conviction for the assault and battery of Herrera and his conviction for the assault and battery of Rodríguez as separate prior felony convictions and therefore sentencing Mangos to a base offense level of 24. Mangos asserts that the sentences for these offenses were related because they were consolidated for sentencing. He contends that because the sentences were related, the offenses should be treated as a single prior felony conviction under section 2K2.1. This argument, however, is based upon a misreading of the guidelines. Mangos cites section 4A1.2(a)(2), which states, "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." By its own terms, this provision does not govern the treatment of "prior felony convictions" under section 2K2.1. As a result, we conclude that Mangos's argument regarding related sentences is without merit.

II.

■ Mangos contends that the district court erred in including his conviction in a Maine state court for assaulting his sister as part of his criminal history for the purposes of sentencing. Mangos claims that the conviction was not counseled and is not a reliable indicator that he actually committed the assault. The government responds that the Maine conviction was counseled and that no basis exists for rejecting that conviction as unreliable. Because the parties dispute whether the Maine conviction was counseled, the questions we must address are questions of fact. Therefore, we review only for clear error. *See United States v. Goldberg,* 105 F.3d 770, 777 (1st Cir.1997).

On November 1, 1993, the State of Maine arrested Mangos for assaulting his sister, Roxanna Mangos. In March 1994, the state moved to have the charge "filed" with no costs. Later that year, however, the charge was brought forward again when Mango was also charged with operating a vehicle while under the influence and operating after sus-

pension. Mangos pleaded guilty to all of the charges. Mangos was sentenced to ten days for the assault, to be served concurrently with a seven day sentence imposed for the offenses.

The current dispute arises from the form of representation Mangos was assigned on the day he plead guilty to the above charges. At the time Mangos was arraigned, the state court had a pilot program known as "lawyer for a day." The purpose of the program was to facilitate early resolutions of cases by allowing people who were considering entering guilty pleas to consult with an attorney. Typically, the lawyer for the day, usually an experienced criminal defense attorney, would be assigned to about fifteen defendants. The lawyer would meet with the defendants for anywhere from five minutes to a half hour. During that time, the lawyer would review any available paperwork, discuss apparent defenses, and negotiate with the district attorney.

■ Mangos appears to argue that this form of representation was too limited to be considered legal counseling. We are not persuaded. Mangos was assigned an experienced criminal defense attorney charged with the professional duty of zealous advocacy. Mangos's lawyer appears to have had discretion both in how long to consult with Mangos and in what courses of action to advise. Nothing indicates that Mangos's attorney was in any way prohibited from advising against a guilty plea or suggesting that Mangos seek further counsel. In light of these facts, it is clear that Mangos's claim that he was not counseled is, in actuality, an ineffective assistance of counsel claim. A sentencing court is an inappropriate forum for ineffective assistance of counsel claims addressed to prior convictions. *See Custis v. United States,* 511 U.S. 485, 496, 114 S.Ct. 1732, 1738–39, 128 L.Ed.2d 517 (1994).

■ We also conclude that the Maine conviction was a reliable indicator that Mangos committed the charged offense. Mangos pleaded guilty to assaulting his sister and was sentenced to ten days in prison. We refuse to probe Mangos's possible motives for entering that plea, and accept the guilty plea as an admission of guilt. We hold that the district court did not clearly err in including the Maine conviction as part of Mangos's criminal history.

### III.

■ Mangos argues that the district court erred in failing to grant an additional downward departure (beyond the section 5K1.1 downward departure) under U.S.S.G. § 4A1.3 (Policy Statement). Section 4A1.3 provides, in part, that a sentencing court may depart from the applicable guideline range when "the court concludes that a defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history or the likelihood that the defendant will *commit further crimes.*"

■ Generally, an appellate court lacks jurisdiction to review a sentencing court's discretionary decision not to depart below the guideline sentencing range. *United States v. Pierro,* 32 F.3d 611, 619 (1st Cir. 1994), *cert. denied,* 513 U.S. 1119, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995). An exception to this general rule applies when the sentencing court's decision not to depart is based upon its belief that it lacks the authority or power to depart. *Id.; United States v. Morrison,* 46 F.3d 127, 130 (1st Cir.1995).

After reviewing the record, we do not believe the exception is applicable in this case. Mangos made the overrepresentation argument to the district court. The district court expressed that it had taken into account the arguments for a downward departure but concluded that the assigned criminal history category "adequately and appropriately" represented Mangos's extensive criminal history. Thus, the district court recognized its authority to depart downward on this ground and exercised its discretion in declining to do so. Consequently, we lack jurisdiction to review its determination.

### IV.

■ Finally, Mangos maintains that the district court erred in failing to grant a downward adjustment for his role in the offense of transferring a firearm. Specifically, Mangos asserts that the district court

should have considered his role in the context of the overall criminal activity including the robbery and not just in the context of the transfer of the firearm. He further argues that, even in the context of the transfer of the firearm, he was still less culpable than other participants.

 Under the Sentencing Guidelines, a defendant's offense level may be adjusted downward if the defendant was substantially less culpable than other participants in the crime. U.S.S.G. § 3B1.2 (1995). The burden, however, is on the defendant to establish that a downward adjustment is warranted. *United States v. Ortiz,* 966 F.2d 707, 717 (1st Cir.1992), *cert. denied,* 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993). In addition, because role-in-the-offense determinations are fact-bound, we review them only for clear error. *United States v. Jackson,* 3 F.3d 506, 508 (1st Cir.1993).

The district court considered sentencing Mangos according to the guidelines for robbery, U.S.S.G. § 2B3.1, but ultimately sentenced Mangos according to the guidelines for prohibited transactions involving firearms or ammunition, U.S.S.G. § 2K2.1. Mangos was therefore not convicted of either the robbery or the attack on Jennifer Hanscomb, and the court held that he was not substantially less culpable than the other participants for his convicted offense of illegally transferring a firearm. At sentencing, the district court assumed for the purposes of sentencing that Sam Gaiewski was involved in transferring the firearm and may have been the individual who actually removed the firearm from Mangos' apartment. The district court, nevertheless, found that Mangos owned the firearm, knew of its intended use, and authorized its transfer. The district court held that, as a result, a role reduction was not appropriate. The district court did not clearly err in this determination.

We affirm the sentence imposed by the district court.