# United States Court of Appeals
## For the First Circuit

No. 02-2583

UNITED STATES OF AMERICA,

Appellee,

v.

BENNIE SANTOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(Hon. Patti B. Saris, U.S. District Judge)

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Veronica J. White for appellant.
Theodore B. Heinrich, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

March 30, 2004

**STAHL**, **Senior Circuit Judge**.  On March 15, 2000, a federal grand jury indicted Bennie Santos on three counts of possessing with intent to distribute, and distributing, crack cocaine, in violation of 21 U.S.C. § 841(a)(1). On October 29, 2001, Santos pled guilty to one count pursuant to a plea agreement under which the government agreed to dismiss the remaining counts.

At sentencing, the district court concluded that Santos was a career offender based on two prior convictions--one for assault and battery on a police officer (Mass. Gen. L. ch. 265, § 13D[1]) and another for simple assault and battery (Mass. Gen. L. ch. 265, § 13A[2])--that it determined were "crimes of violence" under §§ 4B1.1 and 4B1.2 of the  United States Sentencing Guidelines.  The sole issue on appeal is whether this determination was appropriate.

With regard to the first predicate conviction--two counts of assault and battery on a public servant--the district court had before it a police report of the incident giving rise to the conviction.  The court, however, did not consider this report on

---

[1]"Whoever commits an assault and battery upon any public employee when such person is engaged in the performance of his duties at the time of such assault and battery, shall be punished by imprisonment for not less than ninety days nor more than two and one-half years in a house of correction or by a fine of not less than five hundred nor more than five thousand dollars."

[2]"Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than two and one-half years in a house of correction or by a fine of not more than $1,000."

the crime of violence issue.  The report indicated that on December 28, 1995, three police officers

> observed [Santos] traveling at a high rate of speed in the area of John Eliot Square.  A motor vehicle stop was conducted at 71 Kennelworth Street.  As Officers approached the motor vehicle, a strong smell of burning marijuana was coming from the motor vehicle. . . . Santos, Benny . . . exited the motor vehicle. . . . While [questioning him] I observed him having difficulty speaking.  I asked him to open his mouth.  The suspect opened his mouth and I observed several plastic bags of a white substance I believed to be crack cocaine.  When I asked the suspect to spit them out he refused, pushed me and attempted to flee.  After a brief struggle and with the assistance of P.O. Thompson, we were able to place [Santos] under arrest.  [Santos] was able to swallow the plastic bags in his mouth during the struggle.

In Roxbury District Court, after Santos admitted to these facts and was placed on probation, the charges were continued without a finding.  On October 30, 1997, Santos was discovered in violation of his probation terms and the charges were brought forward, resulting in a conviction.  He was sentenced to fifty-nine days in prison.

As for the second predicate conviction, the district looked to the charging instruments, which alleged that on June 3, 1996, Santos did "assault and beat" two victims, Robert Silva and Clayborn Blair, in violation of Mass. Gen. L. ch. 265, § 13A.[3]  A

---

[3]"Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than two and one-half years in a house of correction or by a fine of not more

third charge alleged that Santos committed an assault and battery on Silva by means of a dangerous weapon, a knife, in violation of Mass. Gen. L. ch. 265, § 15A. On January 22, 1997, Santos pled guilty in Suffolk Superior Court to the two assault and battery charges, and the assault and battery with a dangerous weapon charge was filed without a change of plea. He was sentenced to three years probation as to each assault and battery count and ordered to participate in a violence prevention program. On November 7, 1997, the Superior Court, after finding him in violation of his probation, revoked probation and imposed a sentence of one year in prison.

The district court relied on United States v. Fernandez, 121 F.3d 777 (1st Cir. 1997), and United States v. Mangos, 134 F.3d 460 (1st Cir. 1998) in concluding that both predicate offenses were "categorically" crimes of violence for purposes of the career offender provision.[4] The court set Santos's adjusted offense level at twenty-nine, which included a three-level reduction for acceptance of responsibility. Career offender status placed him in criminal history category VI, resulting in a guideline sentencing

---

than $1,000."

[4]The court remarked that "even if [it] did" have more "discretion" free of our categorical approach to determining "crimes of violence" under § 4B1.2, it would not exercise it for the assault and battery on a police officer predicate because the uncontested recitation of events in the police report only further solidified its conclusion.

range of 151 to 188 months' imprisonment. The court sentenced him to 151 months' imprisonment, to be followed by thirty-six months of supervised release. This appeal followed.

**DISCUSSION**

Whether a prior conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1 is a question of law that we review de novo. United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994). We review factual conclusions by the sentencing court, which must be supported by a preponderance of the evidence, for clear error. United States v. Damon, 127 F.3d 139, 141 (1st Cir. 1997). According to the sentencing guidelines, career offender status attaches if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1. The only issue here is whether (3) is satisfied.

For purposes of the career offender provision, the sentencing guidelines define "crime of violence" as:

> (1) [A]ny offense under federal or state law punishable by imprisonment for a term exceeding one year that–
> (i) has an element the use, attempted use, or threatened use of physical force against the person of another, or
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or

-5-

> otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2.

Some offenses are easily recognized as crimes of violence because they are specifically listed in the guideline, e.g., arson, or because an essential element of the offense includes the use or threatened use of force against another person, e.g., armed robbery. But an offense not listed, and which does not include among its elements the use, attempted use, or threatened use of force against another person, still might qualify under § 4B1.2 if it involves conduct that "presents a serious potential risk of physical injury to another." We generally have employed a standard "categorical approach" to determine whether an offense qualifies on this third alternative ground. Our inquiry under the categorical approach "is restricted to the statutory definition . . . of the prior offense . . ., without regard to the particular facts underlying [it]." United States v. Meader, 118 F.3d 876, 882 (1st Cir. 1997); cf. Taylor v. United States, 495 U.S. 575, 600 (1990) (adopting a similar approach when determining whether a crime is one of violence under the armed career criminal provisions of 18 U.S.C. § 924(e)(2)(B)(ii)).[5]

_____

[5]The Armed Career Criminal Act, 18 U.S.C. § 924(e), contains a sentence enhancement provision similar to that in the career offender guideline, and courts have "look[ed] generally to cases pertaining to either provision 'to elucidate the nature of the categorical inquiry.'" United States v. Delgado, 288 F.3d 49, 53

In United States v. Harris, 964 F.2d 1234, 1236 (1st Cir. 1992), we noted that "[t]he Massachusetts 'assault and battery' statute covers two separate crimes--one involving actual (or potential) physical harm and the other involving a 'nonconsensual' but unharmful touching." See also Commonwealth v. Burke, 390 Mass. 480, 482-83 (1983). The Massachusetts statute for assault and battery on a public servant reflects the same. See Fernandez, 121 F.3d at 779.

"[N]otwithstanding that its statutory definition admits a non-violent means of commission," we held in Fernandez that "assault and battery upon a police officer, in violation of Mass. Gen. L. ch. 265, § 13D, is categorically a crime of violence within the meaning of the career offender provisions" of § 4B1.1. 121 F.3d at 778. We considered it

> self-evident that assault and battery upon a police officer usually involves force against another, and so meets that standard. At a minimum, assault and battery upon a police officer requires purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties. See Commonwealth v. Moore, 36 Mass. App. Ct. 455, 632 N.E.2d 1234, 1238 (Mass. App. Ct. 1994). While it is true that neither violence, nor the use of force, is an essential element of the crime as statutorily defined, still, violence, the use of force, and a serious risk

n.5 (1st Cir. 2002) (quoting United States v. Shepard, 231 F.3d 56, 63 n.7 (1st Cir. 2000)); see also Meader, 118 F.3d at 882 (Taylor's categorical approach as applied to the ACCA is persuasive authority for applications of USSG § 4B1.1).

-7-

> of physical harm are all likely to accompany an assault and battery upon a police officer. See, e.g., Winter, 22 F.3d 15 at 20 ("A categorical approach is not concerned with testing either the outer limits of statutory language or the myriad of possibilities girdled by that language; instead, a categorical approach is concerned with the usual type of conduct that the statute purports to proscribe.").

Id. See also United States v. Santiago, 83 F.3d 20, 26-27 (1st Cir. 1996); United States v. Pratt, 913 F.2d 982, 993 (1st Cir. 1990). This ends our inquiry with regard to Santos's predicate conviction for assault and battery on a police officer. We are steadfast in our view that the crime carries a particularly high risk of physical injury and violence. The district court was not required to look any further than the statute itself.

In Mangos, we suggested the same with regard to the Massachusetts simple assault and battery statute:

> While we recognize that the risks inherent in the assault and battery upon a police officer may differ from those involved in a simple assault and battery, we believe that the reasoning in Fernandez applies with similar force to this case.

134 F.3d at 464. As with Santos's predicate conviction for simple assault and battery, the charging document in Mangos stated that the defendant "did assault and beat" the victim. We found that this characterization placed the offense in the harmful battery type, thereby meeting the definition of a crime of violence under § 4B1.2. Id. Here, the district court similarly recognized that

with a simple assault and battery to which the defendant has pleaded guilty, it is necessary to look to the charging instruments to determine the nature of the offense. By reviewing the charging documents, as in Mangos, the court properly determined that because Santos was charged with assaulting and beating the victims, a "crime of violence" was at issue.

Santos relies on the Seventh Circuit's handling of the Massachusetts assault and battery statute in United States v. Jones, 235 F.3d 342 (7th Cir. 2000), for the broad proposition that, where the charging documents use "boilerplate" language to allege an assault and battery under Massachusetts law, a sentencing court may not use that prior conviction to enhance a sentence. In Jones, the Seventh Circuit reviewed the charging document for the defendant's predicate assault and battery conviction, which stated that the defendant "did assault and beat" the victim. Id. at 347. The court concluded that "no inference regarding whether [the defendant] committed a crime of violence can be drawn from the charging document's use of [that boilerplate] phrase." Id. More importantly, the court was specifically troubled by evidence adduced at sentencing that the defendant did not physically assault the victim but instead was merely stopping her from hitting him. Id. at 347-48. Given contested factual issues "that required the district court to make choices about which evidence to believe and what inferences to draw," the Jones court held that the district

court erred in ruling that the defendant's predicate conviction for assault and battery was a crime of violence under § 4B1.2. Id. at 348.

We do not agree with the Seventh Circuit's basic premise that "boilerplate language" alleging an assault and battery under Massachusetts criminal law is insufficient to deem a subsequent conviction a crime of violence under § 4B1.2. In any event and in contrast to Jones, the charging documents here alleged that Santos not only committed an assault and battery, but that he did so, at least with one of the victims, with a dangerous weapon. Where the charging instruments are instructive on the issue of whether a predicate offense is a crime of violence, we need not look further. See United States v. Damon, 127 F.3d 139, 145 (1st Cir. 1997). Such is the case here, where the statutory definition and charging documents established that the crime contemplated by both Santos and the government in his guilty plea was not a mere "nonconsensual touching," but a "physically harmful" or "potentially physically harmful" one that qualifies as a crime of violence under § 4B1.2. Furthermore, the Seventh Circuit's animating concern was absent both here and in Mangos, where we discerned "nothing in the record or the charging document" that suggested the defendant committed a nonharmful type of assault and battery. 134 F.3d at 464.

Along the same lines, in Harris, we relied on the charging documents and other uncontested allegations in concluding

-10-

that the defendant's two prior assault and battery convictions qualified as "violent felonies" for armed career criminal status. 964 F.2d at 1236-37. In addition to the "boilerplate" language in the charges, the "case file reflect[ed]" with respect to both convictions that the defendant was armed with a knife as he assaulted and beat his victim. Id. at 1237. These two items were sufficient for us to conclude that the government "charged [the defendant] with, and that he pled guilty to, the harmful type of assault and battery against [the victim]." Id. Here, the district court properly looked no further than the charging documents to conclude the same for Santos's predicate assault and battery conviction.

Accordingly, we affirm the sentence.