**UNITED STATES of America,**
**Plaintiff,**

v.

**Kern BIRKETT, Defendant.**

**Criminal Action No. 06–10139–WGY.**

United States District Court,
D. Massachusetts.

Aug. 21, 2007.

Theodore B. Heinrich, United States Attorney's Office, Boston, MA, for Plaintiff.

*SENTENCING MEMORANDUM*

YOUNG, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2006, the United States indicted Kern Birkett ("Birkett") for possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1).

Birkett initially pled not guilty. Birkett subsequently challenged the incriminating physical and testimonial evidence collected against him through a motion to suppress. The hearing on the motion to suppress commenced on November 27, 2006. At the hearing, Birkett took the stand and was cross-examined by the government. Despite Birkett's testimony, in light of the evidence introduced by the government, this Court denied the motion to suppress.

After the denial of the motion to suppress, Birkett decided to change his plea. On December 18, 2006, Birkett pled guilty to the charge pursuant to Federal Rule of Criminal Procedure 11.

Following the guilty plea, the Probation Office prepared a Presentence Investigation Report ("PSR"). The Probation Office found that Birkett had two felony convictions for crimes of violence under United States Sentencing Guidelines ("U.S.S.G.") section 2K2.1(a)(2), and calculated the base offense level for the advisory sentencing guidelines at 24. PSR ¶ 18. Birkett's criminal history category was calculated as V. *Id.* ¶ 38. These calculations led to an advisory sentencing guideline range of 92 to 115 months.

On May 10, 2007, the Court held a sentencing hearing. Birkett objected to the PSR's base offense level calculation by challenging the use of a continuation without a finding for a Massachusetts assault and battery charge as a predicate "crime of violence" offense under U.S.S.G. § 2K2.1(a)(2). In light of this argument, the Court continued the sentencing until July 9, 2007.

## II. DISCUSSION

### A. Predicate Offense for a Violent Felony Under U.S.S.G. § 2K2.1

United States Sentencing Guidelines section 2K2.1(a)(2) provides that a defendant who is sentenced for the unlawful possession of a firearm or ammunition ought receive a base offense level of 24 if the defendant already has "at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). Application Note 1 defines by cross-reference to U.S.S.G. section 4B1.2(a) and Application Note 1 of the Commentary to section 4B1.2, which define a "crime of violence" for sentencing a "career offender" pursuant to section 4B1.1. The definition provided in section 4B1.2 includes offenses specifically enumerated (e.g., aggravated assault and robbery) as well as any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2 (a)(1) & cmt. n. 1 (2006).

The definition for a "crime of violence" provided by section 4B1.2 closely tracks the definition of a "violent felony" for purposes of the Armed Career Criminal Act of 1984 ("ACCA"), Pub.L. 98–473 (Oct. 12, 1984) (codified in scattered sections), that created a mandatory minimum penalty of fifteen years for any person convicted under that statute who had three other applicable predicate offenses. *See* 18 U.S.C. § 924(e)(1)-(2). Courts alternatively refer to convictions under the category of a "violent felony" as constituting a "crime of violence." *See, e.g., United States v. Santos,* 363 F.3d 19, 22 (1st Cir.2004). Due to the similarity of the two provisions, cases pertaining to either provide guidance as to the proper inquiry to apply to an allegedly applicable predicate conviction.[1] *Id.* at 22 n. 5; *United States v. Delgado,* 288 F.3d 49, 52 n. 5 (1st Cir.2002).

A "categorical approach" is applied to determine whether an offense satisfies the definition of a "crime of violence." *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor v. United States,* the Supreme Court addressed the question of whether a state conviction for burglary constituted a predicate conviction for sentencing enhancement purposes where the state crime of burglary included conduct more inclusive than a generic burglary statute. *Id.* at 577–79, 110 S.Ct. 2143. The Supreme Court recognized that Congress intended that the sentencing enhancement provisions be triggered by specified elements and not simply by specific crimes so defined in various ways by various state legislatures. *Id.* at 588–89, 110 S.Ct. 2143. Congress, by designating predicate offenses, had in mind categorical definitions of generic offenses. *Id.* at 590, 110 S.Ct. 2143. Where a state statute varies from this generic definition[2] and is more inclusive with regard to punishable conduct, a district court must look only to the statutory definition of the offense and the fact of conviction to determine whether the prior conviction satisfies the definition of a "crime of violence." *Id.* at 599–602, 110 S.Ct. 2143.

This categorical approach prevents a court from considering the particular facts underlying the conviction. *Id.* at 600, 110 S.Ct. 2143. The only exception occurs when the government can show from evidence such as the indictment, information,

---

**1.** One major difference in the relative provisions is that 18 U.S.C. § 924(e)(1) requires three predicate offenses, while U.S. Sentencing Guideline sections 4B1. 1(a)(3) and 2K2. 1(a)(2) only require two.

**2.** Under these circumstances, a state statute is considered "non-generic."

or jury instructions that a jury necessarily had to find all elements of the generic offense to convict the particular defendant. *Id.* at 602, 110 S.Ct. 2143; *see Shepard v. United States,* 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (referring to these examples of adequate judicial record evidence as illustrative, not limitative).

The Supreme Court in *Taylor* also considered the problematic situation where a defendant enters into a plea bargain. *See id.* at 601–02, 110 S.Ct. 2143. The Supreme Court addressed this situation directly in *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), where the defendant's prior convictions stemmed from a guilty plea, not a jury verdict. When faced with a guilty plea, the Supreme Court held that the *Taylor* categorical approach remained the appropriate framework. *Id.* at 19, 125 S.Ct. 1254. The key question is what constitutes an adequate judicial record evidence in this context. *Id.* at 20–21, 125 S.Ct. 1254.

■ This question presents possible Sixth and Fourteenth Amendment problems if the sentencing district judge is allowed to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea." *Id.* at 25, 125 S.Ct. 1254. A sentencing district judge who makes such a disputed factual finding runs afoul of the oft-cited bright line rule of *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), that "any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury." *Shepard,* 544 U.S. at 24, 125 S.Ct. 1254. In addition, the sentencing district judge cannot take shelter within the authority recognized by *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (a prior conviction is a sentencing factor that need not be proved beyond a reasonable doubt) when the disputed fact is "too far removed from the conclusive significance of a prior judicial record," *Shepard,* 544 U.S. at 25, 125 S.Ct. 1254.

In *Shepard,* the Supreme Court reversed the First Circuit's holding that complaint applications and police reports may count as "sufficiently reliable evidence for determining whether a defendant's plea of guilty constitutes an admission to a generically violent crime." *Id.* at 18, 125 S.Ct. 1254 (quoting *United States v. Shepard,* 231 F.3d 56, 67 (1st Cir.2000)). In such a case, a sentencing judge's inquiry is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26, 125 S.Ct. 1254.

In this case, Birkett cites the *Taylor* and *Shepard* framework in challenging the Probation Office's base offense level calculation. Def. Sentencing Mem. [Doc. No. 18] at 4–9. The Probation Office suggests that Birkett's prior continuation without a finding for assault and battery, PSR ¶ 30, and conviction for distribution of marijuana, *id.* ¶ 33, satisfy the predicate offense requirement for a sentencing enhancement under section 2K2. 1(a)(2), *id.* ¶ 18.[3]

---

3. The PSR also lists a continuation without a finding for an Assault & Battery with a Dangerous Weapon. PSR ¶ 29. This offense does not count towards the predicate offense requirement, however, because it does not constitute an adult conviction. *See id.* (noting that Birkett was seventeen years old); U.S.S.G. § 4B1.2, cmt. n. 1 (defining an adult conviction as one generally committed at age eighteen or older).

■ The application of the *Taylor* framework governs whether a prior conviction meets the definition of a "crime of violence" under section 2K2.1. *United States v. Mangos,* 134 F.3d 460, 463–64 (1st Cir.1998); *see also United States v. Bell,* 445 F.3d 1086, 1089, 1091 (8th Cir. 2006); *United States v. Hubbard,* 120 Fed. Appx. 49, 50 (9th Cir.2005) (unpublished opinion). The question is, therefore, whether Birkett's continuation without a finding[4] under Massachusetts' assault and battery statute, Mass. Gen. Laws ch. 265, § 13A, satisfies the categorical approach required by *Taylor* and *Shepard.*

Fitting the Massachusetts assault and battery statute within the federal sentencing scheme has proved to be especially problematic. *See Santos,* 363 F.3d at 23; *United States v. Jones,* 235 F.3d 342, 346 (7th Cir.2000) (applying Massachusetts law); *Mangos,* 134 F.3d at 463–64; *Caggiano v. United States,* 977 F.2d 566, 1992 WL 295141, at *2 n. 5 (1st Cir.1992) (unpublished opinion); *United States v. Harris,* 964 F.2d 1234, 1236 (1st Cir.1992) *abrogated on other grounds by Shepard,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205; *United States v. Bregnard,* 951 F.2d 457, 459–60 (1st Cir.1991); *United States v. Sanford,* 327 F.Supp.2d 54, 59 (D.Me. 2004).

Massachusetts statutory law makes assault and battery a criminal offense that is punishable by imprisonment up to two and one-half years. Mass. Gen. Laws ch. 265, § 13A. The statute does not, however, define the offense. *See id.* As a result, Massachusetts common law provides the applicable definition. *See Commonwealth v. Burke,* 390 Mass. 480, 481–83, 457 N.E.2d 622 (1983). The common law definition includes two separate crimes. *Id.* The first involves actual or potential physical harm. *Id.* at 482–83, 457 N.E.2d 622.

The second involves unharmful, but nonconsensual touching. *Id.* The problematic nature of this statute is that the charging language is boilerplate and fails to distinguish between the two. *Harris,* 964 F.2d at 1237. The proper form of indictment in Massachusetts courts is to charge that the defendant "did assault and beat" the victim, regardless of whether the defendant is charged with the harmful type of battery or the nonconsensual type of assault and battery. Mass. Gen. Laws ch. 277, § 79; *Jones,* 235 F.3d at 347; *Harris,* 964 F.2d at 1237.

The law in the First Circuit is clear that this boilerplate charging language *does not* preclude a categorical conclusion that a defendant's conviction satisfies the definition of a "crime of violence" despite a bifurcated, non-generic assault and battery statute. *See Santos,* 363 F.3d at 24. In fact, it is clear that where adequate judicial record evidence proves that a defendant's prior conviction is of the harmful battery type under the Massachusetts' assault and battery statute, the predicate offense will constitute a "crime of violence." *See id.* at 23 (holding that the harmful battery type of offense satisfied the definition of a "crime of violence" under U.S.S.G. § 4B1.2); *Mangos,* 134 F.3d at 464 (same).

What is less clear is whether a conviction for a nonconsensual touching offense under Massachusetts General Laws, chapter 265, section 13A constitutes a "crime of violence." The First Circuit does not recognize that all such nonconsensual touching offenses satisfy that definition. If it did, the courts would go no further than to rely upon the statutory definition, and they would categorically conclude that a conviction under the non-generic statute constituted a crime of violence. The Massachu-

---

4. There is no question that a Massachusetts continuation without a finding constitutes a prior conviction. *See United States v. Fraser,* 388 F.3d 371, 373–74 (1st Cir.2004).

setts statute would, in the *Taylor* sense, be considered a "generic" statute and would not define assault and battery more broadly than the generic meaning contemplated by Congress. *See Taylor*, 495 U.S. at 599, 110 S.Ct. 2143.

Instead, the courts consistently apply the *Taylor* categorical framework, but rely on more than the statutory definition (e.g., the charging documents) to determine whether the particular offense meets the definition of a "crime of violence." *See, e.g., Santos*, 363 F.3d at 24 (looking to the charging documents); *Mangos*, 134 F.3d at 464 (same). The need to look past the statutory definition implies that at least some offenses under the Massachusetts statute would not meet that definition.

In addition, the crime of assault and battery has been described as encompassing both violent and non-violent conduct. *See United States v. Fernandez*, 121 F.3d 777, 779 (1st Cir.1997). A distinction is drawn between offenses that meet the definition of a "crime of violence" and those that are "a mere 'nonconsensual touching.'" *Santos*, 363 F.3d at 24. As a result, the First Circuit has not held that all nonconsensual touching constitutes "violent" contact for purposes of the "crime of violence" determination. *See id.; Fernandez*, 121 F.3d at 779. In fact, where the offensive conduct is truly limited to mere nonconsensual touching, the First Circuit has implied that such an offense would not satisfy the definition of a "crime of violence." *See Santos*, 363 F.3d at 24.

■ Still, the categorical line may not be drawn decisively between violent and non-violent assault and batteries under the Massachusetts statute. *See id.* The definition of a "crime of violence" will extend to non-violent offenses where the conduct "presents a serious potential risk of physical injury to another." *Mangos*, 134 F.3d at 464 (quoting U.S.S.G. § 4B1.2). For example, in *United States v. Fernandez*,

the First Circuit, interpreting the analogous assault and battery on a police officer statute, Mass. Gen. Laws ch. 265, § 13D, held that even a non-violent touching of a police officer satisfies the definition of a "crime of violence" because of its high potential for physical harm. 121 F.3d at 780.

Thus, the issue in this case is whether adequate judicial record evidence exists that Birkett's prior continuation without a finding under Massachusetts General Law, chapter 265, section 13A was for more than a mere nonconsensual touching or one that presented a high potential for physical harm. In light of *Shepard*, this Court is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26, 125 S.Ct. 1254. This presents a markedly different standard than was applied in much of the First Circuit's precedent applying the *Taylor* framework to the Massachusetts assault and battery statute.

■ Specifically, *Shepard*, in vacating the First Circuit decision, as well as explicitly rejecting the First Circuit's approach in *United States v. Harris*, 964 F.2d 1234 (1st Cir.1992), prohibited the use of police reports and complaint applications as support for finding that the predicate conviction satisfied the definition of a "crime of violence." *Shepard*, 544 U.S. at 19, 125 S.Ct. 1254. In reaching that holding, the Supreme Court rejected the use of non-judicial record documents that contain disputed questions of fact. *Id.* at 25–26, 125 S.Ct. 1254. Under this logic, where a defendant disputes facts contained in a PSR, a sentencing district judge likewise is barred from considering the PSR as adequate judicial record evidence for purposes

of a sentencing enhancement under U.S.S.G. § 2K2.1. *See id.* Thus, *Shepard* severely undermines the First Circuit holdings that look to the PSR to find more than a mere nonconsensual touching, *e.g., Harris,* 964 F.2d at 1236–37 (relying on the same to find that the defendant had a knife).

In this case, the government has not supplied the underlying state indictment or information, the transcript of the plea colloquy, or any other judicially recorded evidence that informs this Court of the defendant's actual offense. The only data in the record before this Court is contained in the PSR. The PSR states that "the criminal complaint alleges the defendant did assault and beat." PSR ¶ 30. As described above, this is boilerplate statutory language and provides no probative evidence of the conduct charged and admitted. The only evidence of charged conduct contained in the PSR comes from police reports. *Id. Shepard* is clear that this Court may not look to such reports for evidence that the conviction constitutes a "crime of violence." 544 U.S. at 16, 125 S.Ct. 1254. Furthermore, the defendant disputes the facts contained in the PSR. Def. Sentencing Mem. at 8. This eliminates any argument that the facts in the PSR may be deemed admitted. *See Bregnard,* 951 F.2d at 460 (holding that facts stated in a PSR are deemed admitted if they are not challenged in the district court).

Thus, in order for this Court to find that the underlying state continuation without a finding constitutes a "crime of violence," it would necessitate a finding of fact that considered non-judicial recorded evidence. As a result, this Court cannot conclude that Birkett was charged or eventually pled to any conduct of more import than mere nonconsensual touching. Such a holding is similar to facts faced by the Seventh Circuit in *Jones.* 235 F.3d at 347–48. It is also distinguishable from oth-

er First Circuit precedent that reached the opposite conclusion. *See United States v. Estevez,* 419 F.3d 77, 82 (1st Cir.2005) (defendant's assault was "clearly" a "crime of violence"); *Mangos,* 134 F.3d at 464 (noting evidence of a physical beating); *Bregnard,* 951 F.2d at 460 (same); *Santos,* 363 F.3d at 24 (noting that defendant committed the assault and battery with a dangerous weapon); *Harris,* 964 F.2d at 1237 (same); *Sanford,* 327 F.Supp.2d at 59 (same).

For these reasons, the government failed to provide this Court with sufficient adequate judicial record evidence categorically to find that Birkett's 2001 continuation without a finding under the Massachusetts simple assault and battery statute constitutes a "crime of violence." As a result, the proper calculation of Birkett's base offense level for the advisory sentencing guidelines under U.S.S.G. § 2K2.1 is 20 pursuant to subsection (a)(4) rather than 24 pursuant to subsection (a)(2).

### B. Statistics

█ The United States sentencing guideline ranges are only advisory. *United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). They must, however, be calculated, considered, and given substantial weight when fashioning an individualized sentence. *See United States v. Jimenez–Beltre,* 440 F.3d 514, 518 (1st Cir.2006) (en banc). One way that this Court seeks to determine what weight to give the advisory guidelines in the circumstances of a particular case is to compare the advisory range to all available sentencing statistics. *See United States v. Griffin,* 494 F.Supp.2d 1, 7 (D.Mass.2007). This involves gathering data on the nationwide, First Circuit, and District of Massachusetts average sentences for the instant offense. *Id.* It also entails considering the average sentence imposed in this Session,

which is independently collected and managed by this Session's court reporter, Donald Womack. *Id.* at 7 & n. 18.

In this case, the Probation Office provided the following statistics for Birkett's felon in possession of a firearm and ammunition offense. The nationwide average was 82 months (data obtained from the United States Sentencing Commission). The average in the First Circuit was 93 months (data obtained from the United States Sentencing Commission) and the average for the District of Massachusetts was 107 months (data obtained from the Probation Office's internal database). The average sentence in this Session was 99 months (data obtained from the publicly available database maintained by court reporter Donald Womack). Transcript of Sentencing Hearing, July 9, 2007 [Doc. No. 24] ("Tr.") at 3:25–4:7.

Birkett raised a considered objection to the use of these statistics. Specifically, he argued that the averages were skewed toward a greater penalty because neither the Sentencing Commission nor the Probation Office separates out the ACCA offenses with their mandatory minimum sentences from the unenhanced sentences for a simple conviction. The Probation Officer confirmed that neither the Sentencing Commission nor this district's Probation Office database separates those offenses driven by the ACCA from the cognate offenses not so affected. Tr. at 11:1–13:18. The averages provided thus cannot be given any persuasive weight until this error is corrected. As a result, this Court did not consider them in determining the weight to be given to the advisory sentencing guidelines or in fashioning Birkett's sentence.

In contrast, the publicly available data maintained independently in this Session accurately reflects this difference. Thus, this Session's average of 99 months was considered and weighed when considering the weight to give the advisory sentencing guidelines. It was of minimal help here, however, in the absence of the larger databases, since a single session hardly has enough samples to provide for statistically significant data.

## C. The Statutory Maximum After *Rita v. United States*

In *United States v. Griffin,* this Court tackled the enduring problem of reconciling a defendant's Sixth Amendment rights with the advisory sentencing guideline regime after *United States v. Booker. See* 494 F.Supp.2d at 14–21. This Court determined that controlling authority and the practical workings of an appellate review based on reasonableness required that the statutory maximum for Sixth Amendment purposes could neither be the minimum sentence provided nor the maximum penalty allowed by the applicable statute. *Id.* Instead, the statutory maximum would be determined by a judge from the facts either proved to a jury or admitted by the defendant through his or her plea. *See id.* at 19–21. Such a determination would be influenced by the advisory guideline calculations and an ever-developing body of common law sculpted by appellate review.

Soon after *Griffin,* the Supreme Court reached a decision in the sentencing case *Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The Supreme Court in *Rita* addressed the narrow question of "whether the law permits the courts of appeals to use [a] presumption" of reasonableness for sentences imposed by district courts within a properly calculated advisory guidelines range. *Id.* at 2459. The Supreme Court answered that limited issue in the affirmative, and it went on to state that the presumption of reasonableness is an appellate presumption only and reflects appellate deference to a sentencing judge's discretion com-

bined with Congress's policy choices and objectives as expressed through the 18 U.S.C. § 3553(a) factors. *Id.* at 2463

■ The Supreme Court considered whether an appellate presumption of reasonableness for a within guidelines range sentence would affect a defendant's Sixth Amendment rights. The Supreme Court answered in the negative. *Id.* at 2465–66. It did so by stating that the Sixth Amendment is violated when a sentencing regime requires a judge to impose a sentence higher than jury-determined facts standing alone. *See id.* A nonbinding appellate presumption of reasonableness *does not require* a sentencing judge to go above the statutory maximum as determined by the jury-determined facts. *See id.* In addition, such a presumption does not forbid a sentencing judge from going above the advisory guidelines where the jury-determined facts provide for a statutory maximum that exceeds a properly determined advisory guideline range. *See id.*[5]

The holding in *Rita* avoids a Sixth Amendment infirmity by confining the presumption of reasonableness to the appellate courts. Were the presumption of reasonableness binding on the district courts, that would render the guidelines de jure mandatory and supplant the focus on jury-determined facts for the assessment of the statutory maximum. While the Supreme Court recognized that the effect of its holding might be that a judge and not a jury would be more likely to find "sentencing facts," it simply stated, as this Court held in *Griffin*, 494 F.Supp.2d at 20 & n. 40, that the Sixth Amendment does not forbid judicial factfinding for sentencing purposes, *Rita*, 127 S.Ct. at 2465; *see also McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Those "sentencing facts" nevertheless must not raise the statutory maximum as

determined by the jury verdict or plea. *See Griffin*, 494 F.Supp.2d at 20 & n. 40.

In light of the *Rita* holding and cognizant that two justices, in a concurring opinion in *Rita*, explicitly ratified and endorsed this Court's practice in *Griffin*, this Court continues to be bound to determine the statutory maximum for the purpose of Birkett's sentencing. *See Rita*, 127 S.Ct. at 2480 n. 5 (Scalia, J., concurring).

In accordance with this procedure, this Court determined the statutory maximum sentence to be 78 months. Tr. at 3:20–21. The Court determined this statutory ceiling by providing dispositive weight to the advisory sentencing guideline range for assault and battery under 2K2.1, calculated based on the facts alleged in the indictment and to which Birkett pled guilty and before any downward adjustment for acceptance of responsibility. Tr. at 2:20–3:21.

### D. Birkett's Sentence

Once the statutory maximum was determined, this Court calculated the advisory guideline range. Tr. at 5:2–7. Due to the Court's ruling rejecting the 2K2.1(a)(2) enhancement, Birkett's criminal history category, and the three level base offense level reduction for acceptance of responsibility, the advisory range was calculated at 46 to 57 months. Tr. at 5:2–7.

This advisory guideline range was significantly below this Session's applicable average sentence of 99 months for this offense. *See* Tr. at 4:5–7; 7:6–13. In addition, this Court considered judicially found facts that, while not piercing the 78 month statutory maximum, were considered both as to the weight to give the calculated advisory guideline range and in this Court's independent consideration of the 18 U.S.C. § 3553(a) factors. Included in

---

**5.** As is described below, such a situation occurred in this case.

this consideration was Birkett's extensive criminal history, specifically his continuation without a finding for assault and battery with a dangerous weapon that he committed while seventeen, PSR ¶ 29, and the continuation without a finding for assault and battery that was not considered, largely and properly based on a technicality, a "crime of violence" for guideline enhancement purposes under section 2K2.1(a)(2), *see id.* ¶ 30.[6]

The Court also considered Birkett's "acceptance of responsibility." Tr. at 20:7–17.[7] Specifically, this Court considered Birkett's willingness to testify at the motion to suppress and, after losing that motion, his willingness to spare the government the need and expense of a trial. *See id.* A defendant is generally given a three-level reduction in his or her base offense level as a discount for sparing the

government the burden and expense of a trial. In this case, under a criminal history category V and an after-reduction base offense level of 17, Congress recommends reducing the sentence by between six and 32 months.[8]

■ In light of the dangerous, gang-related nature of this offense and the long criminal history, this Court concluded that the advisory guideline range, calculated at 46 to 57 months, did not adequately address Birkett's offense. Instead, this Court concluded that a sentence up to the statutory maximum of 78 months was appropriate, just, and warranted. This Court, however, similarly concluded that Birkett ought get a discount for sparing the government a trial. Tr. at 20:13–19. In sum, a reduction of 9 months is in line with Congress's intent and policy judgments as reflected in the advisory sentenc-

**6.** This is precisely the approach adopted by Judge Saylor in imposing an above-guideline sentence in *United States v. Marsh*, 486 F.Supp.2d 150, 159 (D.Mass.2007). There, Judge Saylor cogently observes:

Vacating state court convictions for strategic purposes, particularly to avoid federal sentencing consequences, has lately become commonplace, if not routine. *See* Julie Austin, Note, *Closing a Resentencing Loophole: A Proposal to Amend 28 U.S.C. § 2255*, 79 S. Cal. L.Rev. 909 (2006) (discussing problem in context of habeas corpus proceedings, and noting that Massachusetts convictions are "particularly vulnerable" to challenge). Under the hydraulic pressures of lengthy prospective sentences in the federal system, the impulse by defendants to vacate prior convictions is entirely understandable.

Yet the process is nonetheless deeply troubling. A felony conviction is, and ought to be, a profoundly significant event. Its importance goes well beyond its immediate consequences, such as punishment; sentencing decisions in every jurisdiction in the United States are driven in great measure by the criminal history of the defendant. Felony convictions should neither be im-

posed nor overturned lightly, and under no circumstances should they be treated like a Las Vegas marriage, to be annulled when they become burdensome or inconvenient. Vacating long-standing convictions for strategic purposes also serves to erode public confidence in the criminal justice system. If the process is perceived to be readily manipulable, or even dishonest, the damage to that confidence is likely to be substantial indeed.

*Id.* This Court emphatically agrees.

**7.** The phrase "acceptance of responsibility" is a particularly offensive sophistry that the Sentencing Guidelines have introduced into the common sentencing parlance. This sentencing discount has little or nothing to do with actual remorse and everything to do with the Department of Justice budget. *See United States v. Green*, 346 F.Supp.2d 259, 270–71 (D.Mass.2004), *vacated in part on other grounds by United States v. Yeje–Cabrera*, 430 F.3d 1 (1st Cir.2005).

**8.** These calculations are derived from comparing the maximum and minimum ranges of base offense level 20 with the same of base offense level 17 under a criminal history category V.

ing guidelines and properly reflects Birkett's actions in this case.

Thus, Birkett received a 69 month sentence.

This case presents not a departure from the advisory sentencing range but a more faithful adherence to the actual guideline range that Congress would have applied given the relevant conduct in this case.[9]

9. Now that the Sentencing Guidelines are merely advisory, *Booker,* 543 U.S. at 245, 125 S.Ct. 738, this Court has not hesitated to sentence below the Guidelines wherever appropriate. Indeed, since *Booker,* 54.4% of the sentences imposed by this Court have been below-Guidelines sentences. For a detailed explication of the grounds for each of the individualized sentences, see the sentencing transcripts—upon which the Sentencing Commission never looks—and judgment and commitment orders in *United States v. Sosa,* Crim. A. No. 05–10315–WGY (D.Mass. Mar. 19, 2007); *United States v. Marinez,* Crim. A. No. 05–10315–WGY (D.Mass. Mar. 19, 2007); *United States v. O'Brien,* Crim. A. No. 03–10120–WGY (D.Mass. Feb. 28, 2007); *United States v. Reed,* Crim. A. No. 03–10399–WGY (D.Mass. Feb. 8, 2007); *United States v. Pierre,* Crim. A. No. 05–10265–WGY (D.Mass. Jan. 30, 2007) (appeal pending); *United States v. Griffin,* Crim. A. No. 05–10175–WGY (D.Mass. Jan. 16, 2007) (D.Mass. Jan. 16, 2007), sentence vacated, *Griffin,* 494 F.Supp.2d 1; *United States v. Girouard,* Crim. A. No. 05–10342–WGY (D.Mass. Jan. 11, 2007) (appeal pending); *United States v. Soto,* Crim. A. No. 05–10321–WGY (D.Mass. Jan. 4, 2007) (appeal pending); *United States v. Pierre,* Crim. A. No. 05–10265–WGY (D.Mass. Dec. 13, 2006); *United States v. Worrell,* Crim. A. No. 03–10382–WGY (D.Mass. Dec. 11, 2006); *United States v. Riggs,* Crim. A. No. 05–10082–WGY (D.Mass. Oct. 16, 2006); *United States v. Figueroa,* Crim. A. No. 04–10098–WGY (D.Mass. Jul. 12, 2006); *United States v. Manning,* Crim. A. No. 03–10031–WGY (D.Mass. Jun. 2, 2006); *United States v. Pavao,* Crim. A. No. 04–10098–WGY (D.Mass. May 1, 2006); *United States v. Arco,* Crim. A. No. 04–10372–WGY (D.Mass. Apr. 30, 2006); *United States v. Montero,* Crim. A. No. 05–10238–WGY (D.Mass. Apr. 5, 2006); *United States v. Siciliano,* Crim. A. No. 04–10372–WGY (D.Mass. Apr. 4, 2006); *United States v. Alves,* Crim. A. No. 04–10098–WGY (D.Mass. Mar. 29, 2006), *aff'd,* No. 16–1822 (1st Cir. May 17, 2007); *United States v. Custer,* Crim. A. No. 04–10098–WGY (D.Mass. Mar. 28, 2006), *aff'd,* No. 06–1823 (1st Cir. Feb. 2, 2007); *United States v. Dominguez,* Crim. A. No. 04–10160–WGY (D.Mass. Feb. 28, 2006); *United States v. Rosario,* Crim. A. No. 04–10160–WGY (D.Mass. Feb. 23, 2006); *United States v. Day,* Crim. A. No. 05–10229–WGY (D.Mass. Feb. 8, 2006); *United States v. Mahana,* Crim. A. No. 05–10269–WGY (D.Mass. Feb. 2, 2006); *United States v. Stewart,* Crim. A. No. 05–10062–WGY (D.Mass. Jan. 5, 2006); *United States v. Frias–Ortega,* Crim. A. No. 05–10117–WGY (D.Mass. Dec. 13, 2005), *aff'd,* No. 06–1156 (1st Cir. Sept. 12, 2006); *United States v. Bleidt,* Crim. A. No. 05–10144–WGY (D.Mass. Dec. 5, 2005); *United States v. Fuller,* Crim. A. No. 05–10082–WGY (D.Mass. Nov. 16, 2005); *United States v. Villa,* Crim. A. No. 04–10160–WGY (D.Mass. Oct. 13, 2005); *United States v. Navarro,* Crim. A. No. 04–10319–WGY (D.Mass. Oct. 6, 2005); *United States v. Mercedes,* Crim. A. No. 04–10319–WGY (D.Mass. Oct. 6, 2005); *United States v. Zhaoxin,* Crim. A. No. 04–10156–WGY (D.Mass. Sept. 28, 2005); *United States v. Montero,* Crim. A. No. 03–10349–WGY (D.Mass. Sept. 12, 2005); *United States v. Miranda,* Crim. A. No. 04–10160–WGY (D.Mass. Sept. 12, 2005); *United States v. Guerra,* Crim. A. No. 03–10349–WGY (D.Mass. Sept. 12, 2005); *United States v. Ramos,* Crim. A. No. 04–10146–WGY (D.Mass. Jul. 25, 2005); *United States v. Teague,* Crim. A. No. 03–10362–WGY (D.Mass. May 12, 2005), *aff'd,* No. 05–1789 (1st Cir. Nov. 29, 2006); *United States v. Lino,* Crim. A. No. 03–10377 (D.Mass. Apr. 25, 2005), *aff'd,* 493 F.3d 41 (1st Cir.2007); *United States v. Montano,* Crim. A. No. 00–10073–WGY (D.Mass. Apr. 12, 2005); *United States v. McCreadie,* Crim. A. No. 04–10338–WGY (D.Mass. Apr. 12, 2005); *United States v. Langevin,* Crim. A. No. 04–10302–WGY (D.Mass. Apr. 12, 2005); *United States v. Pleitez–Martinez,* Crim. A. No. 04–10131–WGY (D.Mass. Mar. 8, 2@005), *aff'd,* No. 05–1501 (1st Cir. Nov. 9, 2005); *United States v. Dicicco,* Crim. A. No. 04–10005–WGY (D.Mass. Feb. 3, 2005); *United States v. Brown,* Crim. A. No. 04–10225–WGY (Jan. 31, 2005). It is worthy of note that the government has appealed only two of these sentences. A sentence above the properly calculated guideline range that *does not exceed the defendant's admissions or jury fact-finding* ought be equally plausible (albeit

This sentence protects Birkett's Sixth Amendment rights by identifying the statutory limit that may be imposed given the facts to which he pled guilty. Once this was established, the Court was not required to turn a blind eye to relevant conduct that informed the Court as to where the sentence ought fall below that statutory maximum. In so doing, the Court considered the guidance provided by the Sentencing Commission substantively as it applied to this case and these facts, which included facts of a prior conviction that, while impermissible to raise the statutory maximum, would require a sentence more severe than the "properly" calculated advisory guidelines. To do otherwise would exemplify the fear that sentencing judges will now apply the advisory guidelines mechanically, thus reducing the sentencing judge's role to that of a arithmetician. This is a fear that is only furthered by the Supreme Court's decision in *Rita*, which now encourages and insulates a within-guideline sentence.

rarely imposed). This decision and the Court's sentence in *United States v. Andrade*, Crim. A. No. 06–10140–WGY (D.Mass. Jul. 19, 2007) (unpublished opinion) are the only instances in this Session of such sentences. It would be unfortunate indeed if the record keeping of the Sentencing Commission (which nowhere indicates the degree of upward or downward departures or variances from the Guidelines) were to be used to argue that district judges are imposing sentences above the defendant's admissions or jury driven fact-finding. There is, in fact, no evidence to support such a conclusion.