COMMONWEALTH *vs.* JAN E. MANNING.

Middlesex.    April 12, 1978. — June 7, 1978.

Present- HALE, C.J., KEVILLE, & BROWN, JJ.

*Practice, Criminal,* Discovery, Instructions to jury. *Evidence,* Fresh complaint. *Unnatural Sexual Intercourse. Rape. Assault and Battery with Dangerous Weapon.*

The defendant in a criminal case was not entitled to dismissal of the indictments on the ground that the Commonwealth had failed to provide the defendant with requested discovery materials where defense counsel took no steps prior to impanelling of the jury to enforce his discovery motions, the materials sought by the discovery motions had been delivered before the hearing on the defendant's motion to dismiss, the Commonwealth's file was open to the defendant prior to trial, and the defendant was not prejudiced by any delay in the delivery of the materials. [433–434]

Upon appeal by a defendant convicted of rape, there was no merit to the defendant's contention that testimony of three prosecution witnesses and one line in a medical report were admitted in violation of the "fresh complaint" doctrine as set out in *Commonwealth* v. *Bailey,* 370 Mass. 388 (1976), and *Commonwealth* v. *Blow,* 370 Mass.

401 (1976), where the testimony was corroborative of the victim's testimony and was limited to its corroborative purpose by clear and forceful instructions by the judge and where the medical report contained less than what the examining doctor had testified to without objection. [434]

Although a portion of the judge's charge at a rape trial contained an erroneous definition of unnatural sexual intercourse, the charge, taken as a whole, properly directed the jury's attention to the correct legal principle. [434–436]

At the trial of a defendant charged with assault and battery by means of a dangerous weapon, the judge's charge to the jury that in order to convict the defendant it was not necessary for them to find that the defendant's knife came into contact with the victim constituted reversible error. [436–438]

INDICTMENTS found and returned in the Superior Court on August 11, 1976.

The cases were tried before *Ronan*, J.

*Charlotte Anne Perretta* for the defendant.

*Michael J. McHugh*, Legal Assistant to the District Attorney, for the Commonwealth.

HALE, C.J. The defendant appeals from his convictions of assault and battery with a dangerous weapon (G. L. c. 265, § 15A), rape (as newly defined in G. L. c. 265, § 22, as amended by St. 1974, c. 474, § 1), and kidnapping (G. L. c. 265, § 26) after a trial held pursuant to G. L. c. 278, §§ 33A–33G.

There was testimony that on July 9, 1976, the victim was walking to work when a car stopped alongside her. After a short conversation with the driver, who was alone in the car, the victim agreed to accept a ride to work. Instead of dropping her at her place of work the driver took the victim into the parking lot of an abandoned shopping center. He pulled his car behind the stores and produced a knife. When she refused to lie down as he directed, her assailant tightened his arm around her neck and touched the knife to her throat. Then, as she complied with his order, he took handcuffs from the glove compartment and fastened her hands behind her back. The assailant (whom the victim later positively identified

as the defendant) left the parking lot and drove around until he found a wooded area called the Greek Picnic Grounds. He stopped in the woods and removed the handcuffs from the victim's wrists after she promised not to scream or run away. He next led her further into the woods where he undressed her and forced her to perform an act of fellatio. The victim testified that the defendant also tried to insert his penis into her vagina, and she thought, although she was not sure, that penetration had occurred. The defendant then dressed and drove off, leaving her in the woods. The defendant's confession in his handwriting and signed by him confirmed all of the foregoing except that he denied vaginal penetration. The victim further testified that she walked to the house of a friend and called her mother, who called the police. The victim gave the police a detailed description, assisted them in making a composite drawing of her assailant, and later identified him and his car after a chance encounter on a highway. The defendant makes no objection on appeal to the identification procedures. The principal issues at the trial were issues of fact: whether the knife had in fact touched the victim so as to constitute a battery and whether there was sufficient evidence to support the charge of rape.

After his arraignment in the Superior Court, the defendant, on August 31, 1976, filed timely motions for discovery of the Commonwealth's case. These included motions for the defendant to be provided with exculpatory evidence, police department reports, discovery and inspection of tangible evidence, all criminal records of Commonwealth witnesses, a list of potential Commonwealth witnesses, statements of the defendant, statements of Commonwealth witnesses, grand jury minutes, statements of promises, inducements or rewards, and a bill of particulars. On November 18, one day after the jury were impanelled, the judge held a lobby conference to inquire into the status of the defendant's motion for a bill of particulars. The defendant at that time made an oral

Commonwealth *v.* Manning.

motion to dismiss the indictments on the ground that the Commonwealth had failed to provide the defendant with the requested discovery materials. The judge requested that the defendant put his motion in writing and the next day held an evidentiary hearing on the written motion.

After the hearing the judge found the following to be fact: The prosecutor responded to the defendant's motions on September 23, 1976, informed him that it was the policy of the judge then sitting in the motion session to hear only those motions which could not be agreed to, and invited defense counsel to call him to arrange a conference regarding the motions. Defense counsel and the prosecutor conferred by telephone, and the Commonwealth agreed to furnish all of the requested discovery materials. All the motions were allowed, as a matter of course, in the first session on September 28. Thereafter, on September 30, a copy of the grand jury minutes was forwarded to defense counsel. On October 26 there was a meeting — either by chance or by pre-arrangement — between the prosecutor and defense counsel at which defense counsel was furnished a copy of the defendant's signed statement. Defense counsel was at various times made aware of the "open file policy" imposed by the judge sitting in the first session.[1] When the case was called for trial on November 17, the defendant announced that he was ready for trial. Between the November 18 lobby conference and the November 19 hearing on the written motion to dismiss the defendant was furnished with all of the discovery that he had requested. The judge denied the motion to dismiss in spite of the defendant's assertion, renewed on appeal, that the Commonwealth's compliance was too late and that he was prejudiced thereby in planning his defense.

1. The defendant's motion to dismiss the indictments was properly denied. The judge's findings (a) that counsel

---

[1] Pursuant to this policy, the prosecutor was under a duty to allow defense counsel access to his files for discovery purposes.

for the defendant took no steps prior to the impanelling of the jury to enforce the discovery motions (b) that all materials sought by the discovery motions had been delivered before the hearing was held, (c) that the Commonwealth's file was open to the defendant, and (d) that the defendant was not prejudiced by any delay in the delivery of the materials, were amply supported by the record. There was compliance with the mandates of the Supreme Judicial Court expressed in *Commonwealth* v. *Stewart,* 365 Mass. 99, 105-106 (1974), and *Commonwealth* v. *Lewinsky,* 367 Mass 889, 901-903 (1975).

2. There is no merit to the defendant's contention that testimony of three prosecution witnesses and one line in a medical report were admitted in violation of the "fresh complaint" doctrine as set out in *Commonwealth* v. *Bailey,* 370 Mass. 388 (1976), and *Commonwealth* v. *Blow,* 370 Mass. 401 (1976). The testimony objected to was corroborative of the victim's testimony and was limited to its corroborative purpose by clear and forceful instructions by the judge. The medical report contained less than what the examining doctor testified to without objection on direct examination. Neither was there any "needless rehearsal of the particulars of a gruesome crime" (*Commonwealth* v. *Bailey, supra* at 397) such as would render the testimony more prejudicial than probative. See *Commonwealth* v. *Bailey, id.* at 393; *Commonwealth* v. *Lund,* 5 Mass. App. Ct. 884 (1977). We disagree with the defendant that the admission of part of the medical report in this case was error under *Commonwealth* v. *Spare,* 353 Mass. 263, 265–266 (1967). That case does not aid the defendant.

3. There was sufficient evidence of sexual intercourse or unnatural sexual intercourse to permit the judge to instruct the jury as to rape under G. L. c. 265, § 22. See *Commonwealth* v. *Gallant,* 373 Mass. 577 (1977); *Commonwealth* v. *Gonzales,* 5 Mass. App. Ct. 705 (1977); *Commonwealth* v. *Mamay,* 5 Mass. App. Ct. 708 (1977). This case was tried before the opinion of the Supreme Judicial

Court in *Commonwealth* v. *Gallant, supra,* decided November 2, 1977, and the judge thus lacked the guidance of that case when he instructed the jury. He erroneously stated in his charge that unnatural sexual intercourse was a connection between the male organ and any part of the female's person.[2] Unnatural sexual intercourse was defined in *Gallant* as including "oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Gallant, supra* at 584. The definition given by the judge in this case was too broad; however, he immediately narrowed the definition and brought his charge into the context of the evidence as it had been presented to the jury. He informed the jury that if they found that there had been "oral sex" between the defendant and the victim, they would be warranted in concluding that there was "unnatural sexual intercourse." This instruction correctly stated the law as set out in *Gallant.* Moreover it was a correct statement of the law on the only unnatural act which could have been found by the jury on the evidence before them. Thus, we conclude that the charge on this matter taken as a whole, diverted the jury's attention from the erroneous portion of the charge and properly directed their attention to the correct legal principle.

---

[2] The judge's instructions on unnatural sexual intercourse were as follows: "Unnatural sexual intercourse in the law means a sexual bodily connection and you would have to find in this case that there was a sexual bodily connection between some portion of the male organ with a portion of the female's person. Should you conclude that there was a connection, a sexual bodily connection between the male organ and any other part of her, then you could conclude that that is unnatural sexual intercourse. It is for you to say."

"The term, I think, has been used oral sex in this case. Should you conclude that there was such a sexual bodily connection, then you would be warranted in concluding that that is an unnatural sexual intercourse. It is for you to say. But the first element under this statute is: was there either or, both or neither, sexual intercourse or unnatural sexual intercourse. That is the first element that the Commonwealth must establish beyond a reasonable doubt."

*Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968). *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972). *Commonwealth* v. *Dominico*, 1 Mass. App. Ct. 693, 721 (1974).

4. We agree with the defendant that it was error for the judge to charge the jury that in order to convict the defendant of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A, it was not necessary for them to find that the knife came into contact with the victim.[3] Although the victim did testify that the knife touched her neck, her testimony was somewhat weakened on cross-examination, and the jury could have disbelieved it. The defendant was entitled to a correct instruction on the elements of assault and battery by means of a dangerous weapon.

General Laws c. 265, § 15A, provides, in pertinent part: "Whoever commits assault and battery upon another *by means of a dangerous weapon* shall be punished . . ." (emphasis supplied). The plain words of the statute require that the assault and battery must occur "through the instrumentality of a dangerous weapon." Nolan, Criminal Law § 325 (1976). The defendant has not pointed to any cases on this point, nor have we found any interpreting our own statute or similar statutes in other States. Some aid is given, however, in dicta in *Commonwealth* v. *Morgan*, 280 Mass. 392 (1932), where it was charged that the defendant "being armed with a dangerous weapon did assault and beat" the victim. After conviction Morgan was sentenced to nine to ten years in the State prison. Although the matter of the appropriateness of the sentence was not before the court, it was nonetheless noted that "[a] question has arisen in the mind of the court whether the sentence imposed was in excess of what the law permits. That question is based on the circumstance

---

[3] This instruction was given on two separate occasions: (1) "You can have an assault and battery by means of a dangerous weapon and you need not touch the other person with the weapon." And (2) "[I]t is not necessary that contact be made by way of a knife."

that the indictment does not appear to have been framed upon G. L. (Ter. Ed.) c. 265, § 15A (St. 1927, c. 187, § 1), whereby a felony was created, but seemingly charged a simple assault and battery with words of aggravation, commonly regarded as a misdemeanor. The sentence here imposed was appropriate for a felony but not for a misdemeanor [citations omitted]." *Id.* at 394. In our case, had the jury believed that the defendant merely held the knife and held the victim but did not touch her with the knife, he could have been convicted of simple assault and battery (G. L. c. 265, § 13A), a misdemeanor, or of assault with a dangerous weapon (G. L. c. 265, § 15B), a felony carrying a maximum sentence of five years, but could not properly have been convicted of assault and battery by means of a dangerous weapon, a felony carrying a maximum sentence of ten years.[4]

The language of § 15A is easily distinguished from the language of the armed robbery statute, G. L. c. 265, § 17. That statute requires merely that the robber "being armed with a dangerous weapon" assault and rob the victim. It has long been held that the gist of this offense is being armed, not the use of the weapon. *Commonwealth* v. *Mowry*, 11 Allen 20, 22–23 (1865). *Commonwealth* v. *Cody*, 165 Mass. 133, 137 (1896). *Commonwealth* v. *Nickologines*, 322 Mass. 274, 277 (1948) (conviction affirmed despite fact that gun used in robbery was unloaded). *Commonwealth* v. *Blackburn*, 354 Mass. 200, 205 (1968). *Commonwealth* v. *Goldman*, 5 Mass. App. Ct. 635, 637–638 (1977). In *Commonwealth* v. *Tarrant*, 367 Mass. 411, 415 (1975), the court explained that "in robbery, as in assault by means of a dangerous weapon, whether the weapon is actually used to inflict harm is largely irrelevant." It is significant that no mention was made of the

---

[4] The defendant was sentenced to nine to ten years on the assault and battery charge to run concurrently with a nine to ten year sentence on the kidnapping charge and twenty-five to thirty-five year sentence for the rape.

crime of battery which, it is well known, requires an unlawful "touching," no matter how slight, upon the person of another. *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931).

We conclude that § 15A requires proof that the battery was committed by the use of a dangerous weapon, and in the absence of such an instruction by the judge, the defendant's conviction of assault and battery by means of a dangerous weapon must be reversed.

The judgments entered on the indictments charging rape and kidnapping are affirmed. The judgment entered on the indictment charging assault and battery with a dangerous weapon is reversed, and the verdict on that indictment is set aside.

*So ordered.*