COMMONWEALTH *vs.* THOMAS F. BURNO.

Hampden.    September 12, 1984. — November 19, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Assault and Battery. Practice, Criminal,* Instructions to jury.

At the trial of complaints charging assault and battery by means of a dangerous weapon arising from a collision between an automobile driven by the defendant and a stationary vehicle occupied by two police officers, the judge's charge to the jury that in order to convict the defendant on a reckless conduct theory they must find that the conduct caused "injury," rather than demonstrable physical injury, constituted reversible error in light of testimony by one of the officers that he was shaken, but not injured, as a result of the collision and that he had been told by the second officer that his wrist was sore. [799-800]

At the trial of a defendant who had intentionally crashed his automobile into a police cruiser with two officers in it and, as a result, had been charged with assault and battery by means of a dangerous weapon, the judge did not err in instructing the jury that an "automobile in which a person is riding . . . may be construed to be an extension of the person." [800-802]

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on March 29, 1983.

The cases were tried in the jury session of that court before *McDonough,* J.

*Ellen A. Howard* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant appeals from his convictions on four complaints charging assault and battery by means of a dangerous weapon (a motor vehicle) and on one complaint charging driving to endanger. The defendant claims that the trial judge's charge on assault and battery by means of a dangerous weapon was so incorrect and misleading as to constitute reversible error. The defendant also claims that the prosecutor

exceeded the bounds of proper closing argument by appealing to the passions of the jury and referring to matters not in evidence.[1]

The defendant makes a broad and general claim that the trial judge gave incorrect jury instructions despite being made aware by defense counsel of the "correct" instructions.[2] Our analysis requires only that we examine the argument that the judge failed to instruct that a finding of "demonstrable physical injury" is required for conviction of assault and battery by means of a dangerous weapon based on wilful, wanton, and reckless conduct. We agree with the defendant that the instruction regarding injury was incorrect. For reasons that will appear, we reverse only two of the defendant's four convictions for assault and battery by means of a dangerous weapon.

---

[1] With regard to that claim of error, although this court has indicated its strong distaste for improper argument by either the prosecution or the defense, and, when appropriate, has reversed convictions on that basis, we take this occasion to note that appellate counsel in general have tended to include improper argument as an almost obligatory ground of appeal. See, e.g., *Commonwealth* v. *Ford, ante* 556, 560-561 (1984). This case is an example. The prosecutor's comments were fair inferences from the evidence, as well as permissible in order to correct a blatantly erroneous impression created by defense counsel's argument. Although the prosecutor's comments here did not stray over proper bounds, for *all* counsel we express our concern once more: "Members of the bar, however, would be most ill-advised to consider that each departure from the norm which is not so grievous as to precipitate a reversal of a conviction sets a new and less elevated standard for lawyers' behavior." *Commonwealth* v. *Johnson,* 372 Mass. 185, 197-198 (1977). *Commonwealth* v. *Ferreira,* 381 Mass. 306, 317 (1980). See also *Commonwealth* v. *Chandler,* 17 Mass. App. Ct. 1022, 1025 (1984) (Brown, J. concurring).

[2] As separate claims, or as part of the general claim that the instructions were incorrect, the defendant asserts that the judge (1) inadequately defined the meaning of the offense and gave no attention to *Commonwealth* v. *Welch,* 16 Mass. App. Ct. 271, 276 (1983), although that case had been explained in detail to the judge; (2) failed to instruct that a finding of negligence would result in verdicts of not guilty of wanton and reckless assault and battery; (3) failed to instruct that a finding of "demonstrable physical injury" is required for conviction of assault and battery by means of a dangerous weapon based on wilful, wanton, and reckless conduct; and (4) included an instruction that "an automobile in which a person is riding, as a matter of law, may be construed to be an extension of the person." The second above mentioned aspect, however, was not preserved for appeal, and the defendant does not argue the applicability of the "substantial risk of a miscarriage of justice" standard.

The relevant testimony may be summarized. About 11:40 A.M., on March 28, 1983, while driving a police cruiser on White Street in Springfield, Officers Brown and Minor saw a man and a woman "struggling" beside a parked green Oldsmobile automobile. As the cruiser approached, the man (later identified as the defendant) threw the woman to the ground, "jumped into the Oldsmobile and sped out of the parking lot going northbound on White Street." The officers, with overhead lights and siren on, pursued the defendant, who, weaving back and forth across the "solid double lines," was "passing vehicles in front of him." The defendant, at times traveling between seventy to eighty miles per hour through a "thickly settled area" which contained a school zone in which the speed limit was posted at thirty miles per hour, did not slow down until he reached the intersection of Allen Street. The defendant also ran a red light. As the defendant's vehicle attempted to negotiate a left turn onto Allen Street it suddenly lurched to the right, colliding with a stationary unmarked police car occupied by Officers Pidgeon and Palmer. After the defendant hit the police car, he drove "very slowly" along a chain link fence on the sidewalk of Allen Street. At this point, Officer Brown brought his cruiser parallel to the defendant's car. The defendant then "looked over at [Officers Brown and Minor] and gunned the car, and came off the sidewalk into [their] cruiser." As the defendant pulled out into the street, his car scraped a lightpost and hit the cruiser again. The officers then pursued the defendant until his car struck a cement abutment and stalled. The officers removed the defendant, a small child and a nine-month old baby from the car.

Massachusetts recognizes two theories of assault and battery, one of which requires "the intentional and unjustified use of force upon the person of another, however slight" (*Commonwealth* v. *McCan,* 277 Mass. 199, 203 [1931]), while the other requires a wilful, wanton, and reckless act which results in personal injury to another (*Commonwealth* v. *Welch,* 16 Mass. App. Ct. 271, 274-276 [1983]). "Injury" as defined in *Welch* means more than "unconsented touching, however slight." *Id.* at 275. What is required is "actual physical injury" or "demonstrable physical injury." *Ibid.*

It is against this background that the pertinent instruction must be examined. That instruction provided as follows:

"To prove a battery the Commonwealth must establish an unjustifiable and intentional use of force upon the person of another, however slight [,] or wanton or reckless, an act causing injury to another."

Though not as clear as it might have been, the judge's instruction can be interpreted as correctly stating both of the recognized theories of battery.

On the evidence presented to the jury the convictions of the defendant for assault and battery by means of a dangerous weapon upon Officers Pidgeon and Palmer could only have been based on the "reckless conduct" theory.[3] This is so because the evidence tends to establish that the defendant was traveling very fast on a wet road, and that while he was attempting to negotiate a left turn at the Allen Street intersection, which requires an automobile to bear to the right before making a left turn, he hit the parked automobile occupied by Officers Pidgeon and Palmer. We do not think that permissible inferences from this evidence were sufficient "to bring minds of ordinary intelligence and sagacity" to conclude beyond a reasonable doubt that the defendant intentionally hit the automobile occupied by Pidgeon and Palmer. See *Commonwealth v. Casale,* 381 Mass. 167, 168 (1980). On the other hand, the jury certainly could have found the defendant's conduct to have been reckless.

Under the reckless conduct theory, however, the Commonwealth must show that the officers suffered "demonstrable physical injury" in accordance with the holding of *Welch.* The question is whether using the term "injury" as opposed to "demonstrable physical injury" would make a difference to jurors in a case such as this. The case of *Commonwealth v.*

---

[3] Even though the defendant did not move for required findings of not guilty, our analysis must proceed in this manner because, as will be seen, the instructions were deficient and we have no way of knowing on what theory of the evidence the jury based their verdicts.

*Manning,* 6 Mass. App. Ct. 430 (1978), provides some guid-
ance. In that case an instruction that "it was not necessary for
[the jury] to find that the knife came into contact with the
victim" was held to be erroneous. In this case, Officer Palmer
testified on direct examination that as a result of the collision
he was shaken but not injured, and that Officer Pidgeon (who
did not testify at the trial) told him that his wrist was sore and
that Pidgeon held his wrist for a "few minutes" before getting
out of the automobile. It thus would appear that if the jury had
been given a proper instruction on this point, they could have
reached a different conclusion with respect to one of the offi-
cers, if not both.[4] Consequently, the convictions for assault
and battery by means of a dangerous weapon upon Officers
Palmer and Pidgeon must be reversed.

The other assignment of error relating to the judge's instruc-
tion focuses on the following language:

> "An automobile in which a person is riding, as a matter
> of law, may be construed to be an extension of the person.
> In an unprivileged and intentional application of physical
> force, that automobile may be considered and may be
> construed as an assault and battery upon the person within."

This instruction relates to the charges of assault and battery
by means of a dangerous weapon upon Officers Brown and
Minor, who were involved in the actual pursuit of the defend-
ant. On those charges the Commonwealth proceeded on the
theory of an intentional act.[5] Without the "extension" instruc-
tion, the Commonwealth could not have prevailed because the
element of "force upon the person of another, however slight"
(*Commonwealth* v. *McCan,* 277 Mass. 199, 203 [1931]), could
not have been satisfied.[6]

---

[4] The judge, of course, was not required to charge in the exact words
requested, or give an incorrect instruction. He merely "has the duty to state
the applicable law to the jury clearly and correctly." *Commonwealth* v.
*Corcione,* 364 Mass. 611, 618 (1974).

[5] The defendant does not argue otherwise.

[6] The Commonwealth could not have prevailed under the reckless conduct
theory because neither Officer Brown nor Minor suffered an injury.

The defendant's claim of error here is that the "extension" theory is not supported by case law and that "[a] correct instruction would, at least, have included the requirement that a 'battery' of the car must result in a battery of the occupants of the car."

Relying on *Commonwealth* v. *Bianco,* 388 Mass. 358, 364 (1983), wherein the Supreme Judicial Court stated that it ". . . need not . . . consider whether a criminal act against property may be the basis for a manslaughter conviction," the defendant asserts that the reasoning of *People* v. *Moore,* 50 N.Y.Sup.Ct. 356 (1888), and *Commonwealth* v. *Manning,* 6 Mass. App. Ct. 430 (1978), controls the instant circumstances. From those two cases the defendant concludes that for a "battery" of a car to offend against G. L. c. 265, § 15A, there must be a battery (i.e., a resultant "force") upon its occupants. Upon analysis we do not so read those cases.

In *Manning,* the defendant appealed from a conviction of assault and battery by means of a dangerous weapon on the ground that the jury instructions were erroneous. The facts upon which the conviction was based were, in part, that the defendant "tightened his arm around [the victim's] neck and touched [a] knife to her throat." 6 Mass. App. Ct. at 431. The court noted that, although there was testimony that the knife touched the victim, this testimony was weakened on cross-examination so that the jury could have disbelieved it. Consequently, an instruction that "it was not necessary for them to find that the knife came into contact with the victim" was erroneous. *Id.* at 436. In reversing the conviction of assault and battery by means of a dangerous weapon, the court suggested that, at best, the defendant could have been convicted of a simple assault and battery which resulted when he touched the victim. This was so because the unprivileged touching that lies at the heart of the offense of assault and battery by means of a dangerous weapon must be *manifested through the weapon.* In contrast, there can be no question in this case that the touching, if any, was manifested through the dangerous weapon, that is, the defendant's automobile.

In *Moore,* the victim was driving a horse-drawn sleigh. The defendant intercepted the sleigh, grabbed the reins, and, over the driver's protests, caused it to be turned around and headed in the opposite direction. It is this series of events to which the court was referring when it stated that "[t]he horses and sleigh were the instruments with which [the defendant] directed and augmented his personal and physical force against and upon the body of [the victim]." 50 N.Y.Sup.Ct. at 358. If there was a battery on the occupant of the sleigh, it follows that there must have been a battery on the occupants of the automobile hit by the defendant in this case.[7]

Aside from the *Moore* case, this theory has support in two treatises. In both, the writers note that the "touching" element of a battery does not require the actual touching of the victim. See LaFave & Scott, Jr., Criminal Law § 81, at 604 (1972); Perkins, Criminal Law c. 2, § 2, at 108-109 (2d ed. 1969). Neither writer, however, cites much authority for that proposition. Indeed, aside from *"The Queen* v. *Day,* 1 Cox C.C. 207 (1845)," which is cited by Perkins, *Moore* is the only case cited.[8]

In view of the foregoing, we adopt the reasoning of *Moore,* and hold that the trial judge's instructions regarding "extension" were not erroneous. Accordingly, we affirm the convictions for assault and battery by means of a dangerous weapon on Officers Brown and Minor based on the "intentional" act theory.

---

[7] The court in *Moore* stated that a person sustains "bodily harm, in a legal sense, when another touches his person against his will with physical force intentionally hostile and aggressive, or *projects such force against his person*" (emphasis supplied). 50 N.Y.Sup.Ct. at 358.

[8] *Moore* appears to be the leading case on indirect assault and battery. Accordingly, it has been cited with approval in various jurisdictions. See *People* v. *Tanner,* 3 Cal.2d 279 (1935); *People* v. *Britton,* 6 Cal.2d 1 (1936); *State* v. *Dauzat,* 392 So.2d 393 (La. 1980); *Taylor* v. *State,* 52 Md. App. 500 (1982). None of these cases, however, involves circumstances similar to those in *Moore* or in this case. In passing, it should be noted that, although the majority in *Bianco* declined to entertain the issue, the dissent not only entertained it, but expressed an opinion adverse to the defendant, citing *Moore* with approval. 388 Mass. at 373 (Liacos, J., dissenting).

As no independent argument has been made regarding the conviction of driving to endanger (see note 1, *supra*), we merely note that the conviction was not flawed. Accordingly, the judgments in Nos. JR-83-261A, JR-83-261C, and JR-83-261D are affirmed. The judgments in Nos. JR-83-261B and JR-83-261E are reversed and the verdicts set aside.

*So ordered.*