# United States Court of Appeals
## For the First Circuit

No. 08-2273

UNITED STATES OF AMERICA,

Appellee,

v.

CURTIS HOLLOWAY,
TRUE NAME: CURTIS KAREEM HOLLOWAY,
A/K/A CURTIS H. HOLLOWAY, A/K/A CURTIS K. HOLLOWAY,

Defendant, Appellant.

No. 09-1232

UNITED STATES OF AMERICA,

Appellee,

v.

RICARDO CALVO,JR.,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]
[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Syrie D. Fried, Federal Defender Office, for Curtis Holloway.
Alan Jay Black for Ricardo Calvo, Jr.
Mark T. Quinlivan, Assistant United States Attorney with whom

Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

January 21, 2011

**HOWARD**, **Circuit Judge**.   Under the Armed Career Criminal Act ("ACCA"), codified at 18 U.S.C. § 924(e), a person convicted of being a felon in possession of a firearm who also has three previous convictions for a "violent felony" is sentenced to a minimum of fifteen years in prison.   The two appeals before us raise a recurring issue:  whether a federal court may conclude that a conviction under Massachusetts's simple assault and battery statute qualifies as a violent felony under the ACCA, § 924(e)(2)(B)(i), merely because the state indictment used the boilerplate language "did assault and beat."[1]

Our cases hold that Massachusetts's simple assault and battery statute covers multiple offenses; that at least one of these offenses, "harmful battery," qualifies as a violent felony under the ACCA; and that charging language in a state court indictment alleging that the defendant "did assault and beat" his victim suffices to identify the harmful battery offense.

This last conclusion -- first reached by us in United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998) --  has been

---

[1] In other cases, we have considered a similar question:  the circumstances under which a Massachusetts simple assault and battery conviction will qualify as a predicate conviction for a "crime of violence" under the career offender provision of the U.S. Sentencing Guidelines. United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005); United States v. Santos, 363 F.3d 19, 22 (1st Cir. 2004); United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998). The terms "crime of violence" and "violent felony" are nearly identical in meaning. United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009).  Because of this, "decisions construing one term inform the construction of the other." Id.

challenged often, on the basis that the "did assault and beat" charging language is boilerplate and thus fails to identify the harmful battery offense. Despite this criticism, we have considered ourselves bound by Mangos and have reaffirmed its holding on multiple occasions. United States v. Rivera, 562 F.3d 1, 2 (1st Cir. 2009); United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007); United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005); United States v. Santos, 363 F.3d 19, 23 (1st Cir. 2004)."

The appellants in the present cases, Curtis Holloway and Richard Calvo, urge us to revisit and abandon the Mangos rule, in light of the Supreme Court's decision in Johnson v. United States, 130 S. Ct. 1265 (2010), which held that a Florida battery offense did not qualify as a violent felony under the ACCA. Although Johnson is not directly on point we nevertheless conclude that it casts sufficient doubt on the reasoning set forth in Mangos to require us to take a fresh look at the issue. After doing so, we agree that Mangos's rule that the boilerplate charging language of assault and battery alone establishes a violent felony is no longer good law.[2] It follows that further analysis is ordinarily required

---

[2] Following the procedure described in cases such as Crowe v. Bolduc, 365 F.3d 86, 89 n.1 (1st Cir. 2004) and United States v. Dowdell, 595 F.3d 50, 62 n.8 (1st Cir. 2010), the panel opinion in this case was circulated to all active judges of the court, all of whom posed no objection to our treatment of Mangos and its progeny. We caution that the use of this informal procedure does not convert this opinion into an opinion en banc, nor does it preclude a

in the district courts before the conclusion can be reached as to whether the offense at issue qualifies as an ACCA felony. That further analysis would normally involve (a) looking to the documents permitted under Shepard v. United States, 544 U.S. 13 (2005) and (b) consideration of whether the conduct described in those documents falls within the force clause or the residual clause of the ACCA.

The question of the appropriate next steps in these two cases is more complicated because the district courts in the instant cases relied on our previous pronouncements about the "did assault and beat" charging language when sentencing the appellants under the ACCA force clause. We vacate both sentences and remand for further consideration as noted, and for resentencing.

## I. **Facts**

### A. Holloway

In 2002, a federal grand jury in the District of Massachusetts returned a one-count indictment charging Holloway with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). In 2005, Holloway entered a conditional guilty plea.

suggestion of rehearing en banc on any issue in the case, whether or not related to the panel's treatment of Mangos.

## 1.  First sentencing and appeal

At sentencing, the government argued that the district court should sentence Holloway to a mandatory fifteen-year prison term under the ACCA on the basis of his three prior Massachusetts convictions for assault and battery.  The government noted that each of Holloway's convictions was accompanied by an indictment alleging that he "did assault and beat" the victim.  Citing Mangos and its progeny, the government argued that this charging language sufficed to identify the offense of harmful battery, which is a violent felony under the ACCA.  Holloway claimed that the "did assault and beat" charging language was not peculiar to harmful battery; rather, it was used to charge all types of assault and battery, including a type that would not qualify as a predicate offense under the ACCA.  Because it was unclear which battery offense he had been convicted of, Holloway's argument continued, the district court could not sentence him as an armed career criminal.  The district court accepted Holloway's argument and sentenced him to time served.

The government appealed Holloway's sentence, arguing that the sentencing decision was erroneous in light of Mangos.  We agreed, noting that "Holloway's contention is foreclosed by our precedent which holds that a Massachusetts charging document that states the defendant 'assault[ed] and beat' the victim is sufficient to establish the conviction was for a violent battery."

United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007).  We vacated Holloway's sentence and remanded for resentencing.  Id. at 118-119.

### 2.  Second sentencing and current appeal

On remand, Holloway again argued that the district court could not rely on his Massachusetts convictions for assault and battery to sentence him under the ACCA.  The district court, as it was bound to do, rejected Holloway's argument and sentenced him to the mandatory fifteen-year prison term, to be followed by three years of supervised release.  Holloway now appeals this sentence, claiming that Johnson requires reconsideration of the charging language rule.

### B.  Calvo

Calvo's sentencing followed a similar path.  In 2006, a federal grand jury in the District of Massachusetts returned a superseding indictment charging Calvo with, among other things, being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).  Calvo pled guilty to this particular count.

At sentencing, the government argued that the district court should sentence Calvo to a mandatory fifteen-year prison term under the ACCA because he had three prior Massachusetts convictions for assault and battery.  As at Holloway's sentencing, the government noted that Calvo's assault and battery convictions were

accompanied by the "did assault and beat" charging language that identified harmful battery as the offenses of conviction. Like Holloway, Calvo argued that the charging language was mere statutory boilerplate. The district court rejected Calvo's argument, noting that it was "foreclosed by the case law." It sentenced Calvo to the mandatory fifteen-year prison term, to be followed by five years of supervised release. Calvo appeals, advancing, in all material respects, the same argument as that advanced by Holloway.

## II. Discussion

### A. Legal backdrop

"We review de novo the legal conclusion as to whether a prior conviction qualifies as a 'violent felony.'" United States v. Sanchez-Ramirez, 570 F.3d 75, 81 (1st Cir. 2009).

Under the ACCA, a prior offense will qualify as a violent felony if it is both punishable by imprisonment for a term exceeding one year and either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Clause (i) is sometimes referred to as the "force clause." See e.g., United States v. Davis, 487 F.3d 282, 285 (5th Cir. 2007). The portion of clause (ii) following the

-8-

enumerated offenses is known as the "residual clause." Sanchez-Ramirez, 570 F.3d at 82.

When determining whether a defendant's prior offense qualifies as a violent felony under the ACCA, the sentencing court in the first instance, and we on de novo review, take a categorical approach. Taylor v. United States, 495 U.S. 575, 600 (1990). Under this approach, we consider whether the offense of conviction, as legally defined, qualifies as a violent felony under either of the ACCA's two clauses. Id. This approach is deemed categorical because we may consider only the offense's legal definition, forgoing any inquiry into how the defendant may have committed the offense. Begay v. United States, 553 U.S. 137, 141 (2008); Taylor, 495 U.S. at 600.

"In implementing this [categorical] approach, the first step is to identify the offense of conviction." United States v. Giggey, 589 F.3d 38, 41 (1st Cir. 2009). This can prove challenging when a defendant is convicted under a statute that covers multiple offenses. Id. In such a case, a court may look to a restricted set of documents (e.g., indictment, plea colloquy, jury instructions) to ascertain which of the multiple offenses served as the offense of conviction. Shepard, 544 U.S. at 26; Giggey, 589 F.3d at 41. If those documents do not identify the offense of conviction, however, the conviction may only serve as a predicate offense if each of the possible offenses of conviction

would qualify as a violent felony.  See Shepard, 544 U.S. at 26.

Under these conditions, if at least one of the possible offenses of

conviction would not qualify as a violent felony, the conviction is

unusable for ACCA purposes.  In such a case, it is impossible to

tell whether the defendant was convicted of a violent or non-

violent offense.

The statute at issue here, Massachusetts's simple assault

and battery statute[3], covers multiple offenses.  Specifically, the

statute encompasses three types of battery:  (1) harmful battery;

(2) offensive battery; and (3) reckless battery.[4]  Commonwealth v.

Boyd, 897 N.E.2d 71, 76 (Mass. App. Ct. 2008).  So far, we have

held only that the first of these three types, harmful battery,

qualifies as a violent felony under the ACCA.  See, e.g., Rivera,

562 F.3d at 1.

Because the assault and battery statute covers multiple

offenses, a sentencing court's first task is to identify which

battery offense served as the offense of conviction.  Mangos

involved this aspect of the categorical approach.  In Mangos, the

district court relied on the defendant's prior conviction under

Massachusetts's assault and battery statute when sentencing him as

a career offender.  134 F.3d at 463.  Mangos appealed his sentence,

---

[3] Mass. Gen. Laws ch. 265, § 13A.

[4] These offenses are not defined in the statute.  Instead, Massachusetts common law provides their definitions.  Mangos, 134 F.3d at 463.

arguing that, because it was unclear which battery offense he had been convicted of, his conviction could not serve as a predicate offense. Id. We rejected the premise of his argument, explaining that the indictment in his case, which charged that he "did assault and beat" his victim, sufficed to identify the offense of conviction as "harmful battery," a crime of violence. Id. at 464. In reaching this conclusion, "we interpreted the charging language in the most reasonable sense--that 'the assault amounted to a beating' of the victim." Holloway, 499 F.3d at 118. After Mangos, the rule in this circuit was straightforward:  "did assault and beat" charging language suffices to identify the harmful brand of battery for purposes of sentencing under either the ACCA or the career offender provision of the U.S. Sentencing Guidelines. Rivera, 562 F.3d at 2; Holloway, 499 F.3d at 118; Estevez, 419 F.3d at 82; Santos, 363 F.3d at 23.

## B.  Issues on appeal

The appellants argue that our prior interpretation of the Massachusetts charging language has been undermined by Johnson.  In their view, Johnson requires that we must consider how the charging language is interpreted under state law rather than impose our own construction upon it.  We agree.

The government's response is two-fold.  First, it argues that the charging language argument raised by the appellants is foreclosed; Holloway's under both the "law of the case" and "law of

-11-

the circuit" doctrines and Calvo's under the law of the circuit doctrine. Although the government concedes there are exceptions to these doctrines, it maintains that the Court's decision in <u>Johnson</u> does not implicate them.

The government argues in the alternative that, even if <u>Johnson</u> does implicate an exception to these doctrines and requires us to abandon our charging language rule, we would still have to uphold the sentences of the appellants. The government asserts that all three types of Massachusetts battery offenses qualify as violent felonies under the ACCA, obviating any need to rely on the charging language. We consider the arguments in turn.

1. <u>Law of the case and law of the circuit</u>

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona</u> v. <u>California</u>, 460 U.S. 605, 618 (1983). The doctrine has two branches. <u>United States</u> v. <u>Moran</u>, 393 F.3d 1, 7 (1st Cir. 2004). One of these branches provides "that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation." <u>Id.</u> Holloway's appeal implicates this branch, which "binds, for example, a successor appellate panel in a second appeal in the same case." <u>Id.</u> The law of the circuit doctrine, implicated by both appeals, is a close cousin of the law of the case doctrine. It dictates that "[i]n a

-12-

multi-panel circuit . . . newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point." United States v. Guzman, 419 F.3d 27, 31 (1st Cir. 2005).

There are, of course, exceptions to these doctrines. The most well-known exception, common to both doctrines, applies when "[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court." Igartúa v. United States, No. 09-2186, 2010 WL 4751781 at *10 (1st Cir. Nov. 24, 2010) (quoting United States v. Rodriguez Pacheco, 475 F.3d 434, 441 (1st Cir. 2007)). See Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002) (law of the case); Eulitt ex rel. Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004) (law of the circuit). A Supreme Court opinion need not be directly on point to undermine one of our opinions. "A [Supreme Court] holding . . . can extend through its logic beyond the specific facts of its case." Los Angeles County v. Humphries, No. 09-350, 2010 WL 4823681 at *7 (U.S. Nov. 30, 2010). We need not describe other exceptions to these rules because we conclude an intervening Supreme Court decision has cast into doubt the logic of the Mangos per se equivalence rule.

In Johnson, the Supreme Court considered whether the Florida felony offense of battery by "[a]ctually and intentionally touch[ing]" another person qualifies as a violent felony under the ACCA's force clause. 130 S. Ct. at 1268. The Supreme Court

-13-

ultimately held that it did not.  Id. at 1271.  The Court explained that the ACCA's force clause applies only where the offense at issue has as an element the use of "violent force -- that is, force capable of causing physical pain or injury to another person."  Id. Because the Florida battery offense at issue lacked such an element -- it could be "satisfied by any intentional physical contact, 'no matter how slight'" -- the Court held that it failed to qualify as a violent felony under the force clause.  Id. at 1269-70, 1271.

Johnson, to be clear, does not undermine our first holding in Mangos that harmful battery under Massachusetts law -- a battery offense which has as an element the use of violent force[5] -- qualifies as a violent felony under the ACCA.  It is also true that the appeals here are concerned only with whether particular charging language in a Massachusetts state court indictment suffices to identify the harmful type of battery, an issue Johnson did not address.  A close inspection of the Supreme Court's analysis in Johnson, however, reveals a significant tension between the reasoning of Johnson and the reasoning in Mangos.

Johnson makes clear that in considering whether an offense should be considered a violent felony under the ACCA, federal courts must utilize state court constructions of state law.

---

[5] To convict for harmful battery under Massachusetts law, the prosecution must prove that the defendant intentionally touched his victim with "such violence that bodily harm is likely to result." Commonwealth v. Burke, 457 N.E.2d 622, 624 (Mass. 1983); Commonwealth v. Boyd, 897 N.E.2d 71, 76 (Mass. App. Ct. 2008).

-14-

To define whether an offense is a violent felony under the ACCA, the Supreme Court has always begun with what it has characterized as the "categorical approach," Johnson, 130 S. Ct. at 1273, which asks "whether the elements of the offense are of the type that would justify its inclusion within the [force or] residual provision[s], without inquiring into the specific conduct of this particular offender." James v. United States, 550 U.S. 192, 202 (2007); e.g., Chambers v. United States, 129 S. Ct. 687, 690 (2009). If the statute clearly prohibits only one kind of conduct, then the question is whether that conduct satisfies the definition of "violent felony" in the ACCA. But when statutes criminalize a range of conduct, some of which may fall outside the ACCA's definition, courts must first determine what offense was at issue in the underlying conviction. Courts may consider limited evidence -- such as charging documents and jury instructions -- that show which one of the prohibited offenses the defendant was convicted of committing. Shepard, 544 U.S. at 21; e.g., Chambers, 129 S. Ct. at 690-91 (beginning a categorical analysis by concluding, based on charging documents, that the defendant was convicted only of not reporting to prison under a statute that penalized a range of conduct, including escape).

If this underlying evidence clearly shows the basis for the defendant's conviction, then the remaining question is whether that specific offense falls into the definition of a "violent

felony."  E.g., Chambers, 129 S. Ct. at 690-92.  But if it is unclear from the record, then courts face a further quandary: which offense should courts assume was the basis for conviction?

Where the offense of conviction encompasses both violent and non-violent offenses, and the government has failed to show under Shepard that the offense qualified as a violent felony, Johnson seems to establish that the government has not met its burden.  When a Florida statute defined assault and battery as involving either physical injury or touching without consent and none of the relevant documents showed which was the basis for Johnson's conviction, the Supreme Court concluded that the government had proved no more than touching without consent. Johnson, 130 S. Ct. at 1269.

When considering whether the Florida battery offense qualified as a violent felony under the ACCA's force clause, Johnson also established that a federal court is bound by the construction of state law rendered by the highest court of the state.  130 S. Ct. at 1269; Johnson v. Fankell, 520 U.S. 911, 916 (1997) ("Neither this court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the state.").  Accordingly, in Johnson the Court emphasized that it was bound by the Florida Supreme Court's interpretation of the battery offense

at issue. 130 S. Ct. at 1269. Our decision in Mangos indirectly runs afoul of this principle.

We look to state law. According to the Massachusetts statute prescribing the proper form of criminal indictments and complaints, the following language is sufficient to charge an assault and battery: "That A.B. did assault and beat C.D." Mass. Gen. Laws ch. 277, § 79. The statute does not break the offense down into its various types nor does it provide charging language specific to those types. Consequently, a sentencing court may not rely on the generic "did assault and beat" charging language to identify which particular battery offense served as the offense of conviction. It is clear under state court construction of the statute that the statute encompasses a category of offenses which are no more than offensive touchings. We believe, applying Johnson, that the government has not established the offense of harmful battery as the statute has been construed. Another circuit has come to this same conclusion. United States v. Jones, 235 F.3d 342, 347 (7th Cir. 2000) ("[N]o inference regarding whether [the defendant] committed a crime of violence can be drawn from the charging document's use of the phrase 'did assault and beat.'").[6]

---

[6] To its credit, the government does not argue that the "did assault and beat" charging language actually signifies that the defendant was charged with harmful battery as opposed to the other types. It only urges the application of the law of the case and law of the circuit doctrines.

## 2. The ACCA's residual clause

In the district courts the government did not argue that these defendants were Armed Career criminals under the residual clause of § 924(e)(2)(B)(ii). That clause provides that an offense can also qualify as a "violent felony" under the ACCA if it: "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. The government now seeks affirmance on the grounds that through the convictions themselves and the "did assault and beat" language of the indictments, it has presented enough to show the requirements of the residual clause have been met.

To determine whether the state statute of conviction meets the definition of a violent felony in § 924(e)'s residual clause we again use the categorical approach, "comparing the elements of the state crime against the residual 'otherwise' clause and drawing some conclusions," supplementing that comparison only with the information contained within a narrow range of other documents. United States v. Giggey, 551 F.3d 27, 39, 40-41 (1st Cir. 2008); see also Shepard, 544 U.S. at 26. To fit within § 924(e)'s residual clause, the offense in question must: (1) present a risk of physical injury similar to the risk presented by the clause's enumerated offenses and (2) be similar "in kind" to those offenses. Giggey, 551 F.3d at 41-42. See also Begay, 553

-18-

U.S. at 143. An offense will be similar in kind to the enumerated offenses if it "typically involve[s] purposeful, 'violent,' and 'aggressive' conduct." Begay, 553 U.S. at 144-45; United States v. Almenas, 553 F.3d 27, 34 (1st Cir. 2009).

The government's argument has two discrete parts. First, it argues that we need not reach the categorical analysis under the ACCA's residual clause because we have already held that not only harmful battery but also offensive battery and reckless battery qualify as violent felonies under that clause. The government refers again to our decision in Mangos. It asserts that in Mangos we held that the crime of "offensive battery" could qualify as a crime of violence under the residual clause because it "otherwise involves conduct that presents a serious potential risk of physical injury to another." Mangos, 134 F.3d at 464 (quoting U.S.S.G. § 4B1.2(1)(ii)). This argument is incomplete. Although we may have discussed offensive battery in Mangos, we did not purport to address reckless battery, a type of battery distinct from offensive battery. See Boyd, 897 N.E.2d at 76. Moreover the government overreaches when it says that Mangos actually held that offensive battery qualifies as a violent felony under the residual clause. We did not ultimately resolve whether the state conviction at issue qualified under the force clause or the residual clause. Mangos, 134 F.3d at 464. Instead, we assumed that the assault and battery statute covered both violent and non-violent offenses and relied on

the "did assault and beat" charging language to categorize the defendant's conviction as a crime of violence. Id. Indeed, it was our reliance on the "did assault and beat" charging language that spawned these and prior appeals.

Next, the government argues that even if we have not yet held that the other types of battery qualify as violent felonies under the residual clause, we should do so now on the basis of the defendants' convictions and indictments alone. After examining the reckless battery offense and the record before us, we decline the invitation.

Reckless battery does not typically involve purposeful conduct and thus is not similar in kind to the offenses enumerated within § 924(e)(2)(B)(ii). See Begay, 553 U.S. at 145. To prove reckless battery, the Commonwealth must establish "(1) that the defendant's conduct involve[d] a high degree of likelihood that substantial harm will result to another, or that it constitute[d] . . . disregard of probable harmful consequences to another and (2) that, as a result of that conduct, the victim suffered some physical injury." Commonwealth v. Welch, 450 N.E. 2d 1100, 1102-03 (Mass. App. Ct. 1983) (internal quotation marks and citations omitted). Because the Commonwealth may prove that a defendant committed a reckless battery without establishing that the battery was purposeful or deliberate, the mere fact of such a conviction does not itself render the underlying offense sufficiently

-20-

comparable to those offenses enumerated in § 924(e)(2)(B)(ii). See United States v. Woods, 576 F.3d 400, 412-13 (7th Cir. 2009) ("[T]he residual clause encompasses only purposeful crimes; crimes with the mens rea of recklessness do not fall within its scope."); see also United States v. Herrick, 545 F.3d 53, 59 (1st Cir. 2008) (holding that Wisconsin's vehicular homicide felony is not a crime of violence because it "requires criminal negligence, defined as conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another").

The government has a rejoinder. It argues that because the reckless battery offense "requires the 'intentional commission of a wanton and reckless act'" it is a purposeful offense. But while a defendant convicted of reckless battery may very well have purposefully or deliberately committed certain acts, the act for which he was convicted -- the battery of another -- needed to be neither purposeful nor deliberate for conviction. The mere fact of conviction of such an offense does not bring it within § 924(e)(2)(B)(ii). See Begay, 553 U.S. at 145 (noting that while "a drunk driver may very well drink on purpose . . . the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate," and therefore concluding that a conviction under New Mexico's driving under the influence law does not fit within § 924(e)(2)(B)(ii)); Woods, 576 F.3d at 410 (rejecting the government's argument that "if a

defendant . . . intends the <u>act</u> but was reckless as to the consequences of that act" that the offense may qualify as purposeful).

An example is illustrative.  In <u>Commonwealth v. Burno</u>, 471 N.E.2d 127 (Mass. App. Ct. 1984), the Massachusetts Appeals Court considered the appeal of a defendant who had been convicted of assault and battery after his car struck an occupied car.  <u>Id.</u> at 127.[7]  The court ultimately held that the evidence before it was sufficient to convict the defendant of reckless battery, but not intentional battery.  <u>Id.</u> at 129.  The court reasoned,

> [T]he evidence tends to establish that the defendant was traveling very fast on a wet road, and that while he was attempting to negotiate a left turn at the Allen Street intersection, which requires an automobile to bear to the right before making a left turn, he hit the parked automobile occupied by Officers Pidgeon and Palmer.  We do not think that permissible inferences from this evidence were sufficient "to bring minds of ordinary intelligence and sagacity" to conclude beyond a reasonable doubt that the defendant intentionally hit the automobile occupied by Pidgeon and Palmer.  On the other hand, the jury certainly could have found the defendant's conduct to have been reckless.

<u>Id.</u> (internal citation omitted).  As <u>Burno</u> makes plain, Massachusetts law distinguishes between intentional and reckless

---

[7] Although the assault and battery in <u>Burno</u> occurred by means of a dangerous weapon, a car, the law of simple assault and battery governed the court's analysis.  <u>Id.</u> at 128–29.

batteries.  For purposes of sentence enhancement under the ACCA, that distinction is material.

A conviction under Massachusetts's simple assault and battery statute does not alone qualify as a predicate offense under § 924(e)(2)(B)(ii) because the statutory definition of the offense is not similar in kind to those enumerated offenses.  Giggey, 551 F.3d at 41-42.  Nor does the other permissible evidence the government offered to the district court -- the indictments under which the defendants were charged -- bring the state convictions within the scope of the residual clause.  Other evidence, if admissible under Shepard, could change this calculus.

In sum, because the Massachusetts simple assault and battery statute covers multiple offenses, at least one of which, reckless battery, is categorically not a violent felony, a court may only rely on an assault and battery conviction if it can ascertain that the defendant was convicted of the violent form of the offense (e.g., harmful battery).[8]  Because the district courts here relied on the generic "did assault and beat" charging language when concluding that the defendants had committed harmful battery, we must reverse and remand for resentencing.

---

[8] In order to resolve these appeals, it is unnecessary to decide whether, in addition to harmful battery, offensive battery qualifies as a violent felony under the ACCA.

### III.  Scope of Issues on Remand

The parties dispute what should happen upon remand.  The government argues that it should have free rein to make its case under both the force clause of § 924(e)(2)(B)(i) and the residual clause under § 924(e)(2)(B)(ii).  The defendants argue that the government should not get two bites at the apple.

The government's theory in the district courts was based on the force clause, § 924(e)(2)(B)(i).  At the time the government had the opportunity to introduce <u>Shepard</u> type documents beyond the indictment alone to support its theory but did not do so.  Because, however, both the government and the district courts were operating on the premise that <u>Mangos</u> remained good law, the failure to proffer such evidence was more than understandable.  As to the issue of the residual clause, no party raised or discussed the use of that clause under the ACCA.  Under the circumstances, we perceive no unfairness in allowing the government the opportunity to pursue both the force clause and residual clause theories on remand, using <u>Shepard</u> approved documents.

### IV.  Conclusion

For the reasons provided above, we vacate the sentences of the appellants and remand for resentencing.